MARY W. SOHO *vs.* BETTIE WIMBROUGH ET AL.

*Specific Performance—Family Agreement—Evidence—Statute of Frauds—Part Performance.*

The absolute owner of property has the legal right to enter into a contract to execute a will in favor of the other contracting party, or to execute a deed securing to the other contracting party a vested remainder in the property so owned; and such contracts may be enforced in courts of equity by decree for specific performance.                           p. 510

The law does not look with favor upon agreements of this character, and the contract relied on must be set out in the bill of complaint, must be certain and unambiguous in all its terms, and the proof thereof must be definite and certain, strong and convincing, and such as not to leave any material part of the contract to conjecture and speculation.                           p. 510

Upon an application for the specific performance of an unexecuted agreement, the complainants must not only prove that the agreement was made, but must also so clearly and fully show its terms that the court can have no difficulty in knowing

what they are; the complaint must allege an agreement, the terms of which are clear, definite, and conclusive; and the evidence must be sufficient to prove the allegations.          p. 510

The allegation of a family agreement between a mother and her two children, as to who should have the mother's property after her death, without any allegation or proof as to the time of the agreement, the circumstances under which it was made, or the consideration therefor, will not justify a decree of specific performance in favor of one child, as against the denials by the mother and other child of the making of said agreement.                                          p. 511

A mere family understanding as to the disposition of a parent's property after her death is, in the absence of clear and convincing testimony, not such an agreement as a court of equity will enforce.                                  p. 511

That a parent, by a conveyance and reconveyance, vested her property in herself for life with remainder to her daughter, was not evidence of an agreement by her that her daughter should have the property after her death, in view of the mother's express retention of a power to dispose of the property in fee simple and apply the proceeds to her own use and benefit, and her testimony that there was no such agreement.          p. 511

When an agreement to convey or devise land is entirely oral, the Statute of Frauds is a complete defence to a suit for specific performance, unless the bar of the statute is removed by such partial performance by plaintiff as would make it inequitable to deny that relief.                                          p. 512

The acts of part performance, to take the case out of the statute, must be clear and definite and refer exclusively to the alleged agreement.                                          p. 512

*Decided April 10th, 1924.*

Appeal from the Circuit Court No. 2 of Baltimore City (DUKE BOND, J.).

Bill by Mary W. Soho against Bettie Wimbrough and John D. Wimbrough. From a decree for defendants, plaintiff appeals. Affirmed.

The cause was argued before THOMAS, PATTISON, URNER, ADKINS, OFFUTT, and DIGGES, JJ.

*Leigh Bonsal,* for the appellant.

*Joseph Loeffler,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

On June 28th, 1923, the appellant, Mary W. Soho, filed in the Circuit Court No. 2 of Baltimore City a bill of complaint against Bettie Wimbrough, widow, and John D. Wimbrough, defendants, in which the following allegations are made:

1st. That she is the wife of Aristo M. Soho of New York City, but that for more than three years prior hereto she has lived in Baltimore City with her mother, Bettie Wimbrough, who is a widow seventy-two years of age, at 836 North Eutaw Street.

That on May 7th, 1920, she was living in New York, at which time she was urgently requested by her mother, Bettie Wimbrough, and her brother, John D. Wimbrough, to come at once to Baltimore, as her mother's health was very bad, that she had become almost totally blind, and was in great need of the care of her only daughter, this complainant.

That in compliance with said request she and her daughters came to Baltimore at once and took charge of her mother, the said Bettie Wimbrough, providing for her necessities in all respects, and doing everything for her which would usually be done by some attendant, and that these services have continued from that time, May, 1920, to the filing of the said bill of complaint.

That the defendant, Bettie Wimbrough, owned the property at 836 North Eutaw Street, in fee simple, that said property was of small size and in bad condition; and in addition thereto owned about three thousand dollars of personal property consisting of money in bank, Baltimore City stock, and United States Government bond; that before her said mother had become incapacitated by her physical condi-

tion she had rented out rooms in the property belonging to her on North Eutaw Street, in that way providing for her living expenses; that the appellant finding the said property in a very bad state of repair determined that it was necessary to install a modern heating plant, electric lights and other improvements, and after consultation with her mother and brother, the defendants, determined she would make said repairs and pay for the same with her own money, with the understanding, however, that the said property, 836 North Eutaw Street, should be hers after her mother's death, her mother having a life estate therein, and that the personal property amounting to about three thousand dollars, should be the property of her brother, John D. Wimbrough, after her mother's death, that the complainant would take complete charge of the North Eutaw Street property, renting out the rooms and applying the money as she saw fit, with the express understanding, however, that her mother, the said Bettie Wimbrough, should be provided for and taken care of by the complainant.

That the complainant expended over twenty-five hundred dollars of her own money in the installation of said improvements, and that, in conformity with the family agreement, which had been made by her mother, brother, and herself, who composed the whole family, her mother conveyed the said property, 836 North Eutaw Street, on July 6th, 1920, to Daniel J. Meyler, by deed duly recorded among the Land Records of Baltimore City, that on the same day the said Daniel J. Meyler conveyed the said property back to her mother, Bettie Wimbrough, for life, with remainder to the complainant, which said last mentioned deed was also recorded among the Land Records of Baltimore City; that in the last mentioned deed it was provided that the life tenant, Bettie Wimbrough, should have the benefit of said property and should have the right to sell, mortgage, or dispose of any of it, and that upon the death of the said Bettie Wimbrough the property, or so much thereof as had not been disposed of, would go to the complainant, her heirs and assigns.

That the complainant for more than three years has to the best of her ability cared for said property, renting the same, and producing sufficient income to support the defendant, Bettie Wimbrough, that she has succeeded in giving her mother a most comfortable home, with nourishing food and has provided for her needs, attending to her at all times and helping even to dress and undress her, and performing services which if rendered by paid attendants would cost much more than the total income from the property, 836 North Eutaw Street. That the complainant was at all times kind and considerate to her mother, and that she, the complainant, was greatly surprised on May 18th, 1923, to be told by a neighbor that the said property in which she was then living with her mother had been transferred by her mother to Joseph Loeffler, an attorney, as appeared by the transfer in the papers of May 18th, 1923, and that on the same date the said Joseph Loeffler had conveyed the property back to her mother, in fee simple, without any limitation after her mother's death to the complainant.

That the transfers by her mother, Bettie Wimbrough, to said Loeffler and back to her mother were contrary to the agreement entered into in 1920, at the time the complainant gave up her residence in New York and came to Baltimore and took charge of her mother, expending on said property over twenty-five hundred dollars. That her mother had the right to dispose of all said property to a purchaser, or to mortgage the same, the understanding in the family being that these provisions should be put in, in order to provide for the support of the defendant, Bettie Wimbrough, if it should be necessary, and that your complainant was willing to surrender her rights in remainder if her so doing was necessary in order to support her mother, but that the transfers as made were not made in order to take care of any wants of her mother but were made in order to defeat the rights of the complainant in said property. That the property has not been sold or mortgaged to provide for any needs of the defendant, Bettie Wimbrough, but has resulted in putting the said property in her name absolutely, in such a

manner as to defeat the rights of the complainant which were solemnly agreed to; and the complainant charges that said action has been the result of a combination between her mother and brother, the said defendants, Bettie Wimbrough and John D. Wimbrough, for the purpose of improperly defeating and putting an end to the rights of your complainant.

That her mother, Bettie Wimbrough, has already conveyed to the defendant, John D. Wimbrough, her son, the personal property consisting of money, stock and bonds.

That the defendant, Bettie Wimbrough, has given the complainant notice to vacate the part of the property she occupies, and has been given notice by her mother's attorney that unless she does vacate the property within a reasonable time ejectment would be instituted against her, and on June 27th, 1923, a sign "for rent" was placed on the said house by the defendants.

That the said action of the defendant, Bettie Wimbrough, in disturbing title to the property is in direct conflict with the complainants rights and does her great injustice, that she has demanded of the defendants reimbursement for the expenditures made by her in putting the property in good condition, and that the title to said property be again transferred in such a manner, that at the death of the defendant, Bettie Wimbrough, it shall become the property of the complainant; but the defendants have entirely refused to make any change in the title, and the offer made by the defendants towards compensating her for improvements has been entirely inadequate.

The bill then prays:

1st.    That the deed dated May 16th, 1924, from Bettie Wimbrough to Joseph Loeffler, transferring title to 836 - North Eutaw Street to Joseph Loeffler, and the deed of the same date from Joseph Loeffler to Bettie Wimbrough, conveying the same property, may be declared null and void, that the defendant, Bettie Wimbrough, may be restrained from transferring said property in any way inconsistent with the rights of the complainant under the family agreement made in 1920.

2nd. That the defendant, Bettie Wimbrough, be restrained from taking any steps toward ejecting the complainant from said property, 836 North Eutaw Street, as threatened by her.

3rd. That the defendant, John D. Wimbrough, be restrained from combining with his mother, the said Bettie Wimbrough, in an effort to put an end to the family agreement, which was entered into by the complainant and defendants in 1920, and that the defendant, John D. Wimbrough, be directed to return to said Bettie Wimbrough any property of hers which he has received and which under the family agreement made in 1920 was not to be delivered to the said John D. Wimbrough until the death of his mother, the said Bettie Wimbrough. The bill also contained a prayer for general relief.

The defendants separately answered said bill of complaint. The defendant, Bettie Wimbrough, admits in her said answer that she was stricken with blindness in May, 1920, that the complainant is the wife of Aristo M. Soho, and that the complainant has lived with her for the past three years, but denies each and every other allegation contained in the first paragraph of the bill.

The said defendant admits the ownership of the property, 836 North Eutaw Street, that she rented rooms therein until afflicted with blindness, that the deeds referred to from herself to Meyler and from Meyler back to herself were executed, but denies each and every other allegation made in the second paragraph of the bill of complaint. This defendant further alleges in her said answer that she operated the said property as a rooming house for many years prior to May, 1920, enjoying a lucrative income therefrom, from which said income she was able to contribute generously toward the purchase of said property. That the improvements alleged to have been made by the complainant were not absolutely necessary, and that the complainant was mainly influenced in making them by the approaching wedding of her daughter, that the defendant objected to the making of the improvements, but her objections were ignored

and her physical condition was taken advantage of. The said defendant denies emphatically in said answer that there was ever any agreement of any kind or nature which induced the execution of said deeds and that she was mainly influenced in having created a life estate for herself with the full power to sell, mortgage, lease or in any manner dispose of the absolute estate in said property in fee simple or otherwise, or any part thereof, with the remainder to the complainant, in order to avoid orphans' court expense, in event she died without executing the power contained in the deed from Daniel J. Meyler to herself.

The said answer denies every allegation contained in paragraph three of the bill of complaint bearing on the treatment and attention lavished on her by the complainant, and alleges that practically since May, 1920, she has daily dressed and undressed herself, made her own bed, assisted the cook, and that what attention she received was largely from the cook. She further alleges that on many occasions she had told the complainant that she desired to change the state of the title to the property, and on May 18th, 1923, upon her return home after the execution of the deeds to and from Loeffler, she informed the complainant fully of the transaction. That the complainant since May, 1920, appropriated the entire income from the property, in addition to taking money belonging to the defendant without in any way accounting to her, and at the same time, with her daughters, has occupied a large portion of the premises, using all the defendant's furniture, silver ware, linens, etc.

That she, the defendant, Bettie Wimbrough, admits having given her son absolutely certain personal property, and that this was done voluntarily without the slightest influence on the part of her said son, that she admits she has served notice on the complainant to vacate the part of the property occupied by her, but the complainant not only refuses to vacate but persistently interfered, harassed and annoyed the defendant in her efforts to rent the property, and that the complainant planned to prevent the renting of the property by this defendant, and in this way deprive her of the income

she would thereby receive.   The said defendant denies every
other allegation in the fourth paragraph of the bill, and
alleges that her son, instead of assisting her in restoring the
absolute estate in said property to herself, had, as a matter ·
of fact, hampered her in so doing.

The said defendant further denies that the complainant
has any rights in the property in question or that she is enti-
tled to be reimbursed for expenditures made by her without
the consent or over the objections made by this defendant,
although she made the complainant the offer of fifteen hun-
dred dollars in full settlement of every claim the complain-
ant may have had against her and her property, and this
proposition was declined; that the sum of fifteen hundred
dollars offered exceeded the aggregate cost of the improve-
ments made by the complainant.

The answer of John D. Wimbrough admits that he sent for
his sister in May, 1920, when their mother was stricken with
blindness, but that this was done without the knowledge of
his mother.   The defendant, John D. Wimbrough, denies
that there ever was any such conference, agreement or under-
standing as is alleged in the bill of complaint, that he has no
knowledge respecting the expenditures for improvements on
the property referred to in the bill, that he was not present at
the time the deeds to and from Daniel J. Meyler were exe-
cuted, and that he was astonished some months after the ar-
rival of the complainant to learn that the title to the prop-
erty had been disturbed, and that the complainant refused
absolutely to tell him what had been done, though he inquired
of her constantly.

This defendant denies that he ever combined with his
mother to improperly deprive the complainant of any rights,
which she may have had in the property, and that there is no
foundation for such statement by the complainant.   He
alleges that for a period of more than six months his mother
constantly importuned him to find out for her what actually
transpired on July 6th, 1920, the date the alleged life estate
and remainder were created.   That in order to allay the ·
anxiety of his mother he agreed to do so, inasmuch as the

complainant, his sister, refused to give him any information on that subject. He admits the gifts from his mother to him of some personal property, but denies he ever in any manner influenced or coerced her in so doing, and alleges that his mother is a person who cannot be influenced or coerced by anyone.

He further denies any demand by the complainant upon him for reimbursement for improvements, and alleged that he has no interest in the controversy between his mother and the complainant, or in the property.

Subsequently, on August 9th, 1923, the appellant filed a petition in this case, in which she alleged that the defendant, Bettie Wimbrough, had, on August 3rd, 1923, in the People's Court of Baltimore City, instituted ejectment proceedings against her; and prayed for the passage of an order restraining the said Bettie Wimbrough from proceeding with the said case in the People's Court until this case has been disposed of.

Upon this petition the said Circuit Court No. 2 of Baltimore City passed an order restraining the defendant, Bettie Wimbrough, from prosecuting an ejectment case in the People's Court of Baltimore, instituted by her on August 3rd, 1923, against Mary W. Soho, until the questions involved in this case are finally determined.

The record discloses: "It is agreed by counsel that the case will be tried on bill and answer as well as motion to dissolve the injunction."

After taking testimony, and hearing argument of the respective counsel, the following decree was passed:

"It is thereupon this 5th day of October, 1923, by the Circuit Court No. 2 of Baltimore City ordered, adjudged and decreed that the restraining order heretofore granted against the said Bettie Wimbrough be and the same is hereby dissolved.

"But it appearing to the court that the plaintiff has expended the sum of seventeen hundred and eight dollars in improvements on 836 North Eutaw Street, the property of Bettie Wimbrough, it is further ordered, adjudged and decreed that the said Bettie Wimbrough pay to the plaintiff the sum of seventeen

hundred and eight dollars, and that the plaintiff have a lien on 836 North Eutaw Street for said sum.

"And it is further ordered that the defendant, Bettie Wimbrough, pay the costs of these proceedings."

From the above decree the complainant, Mary W. Soho, has appealed.

Prior to July 6th, 1920, the appellee, Bettie Wimbrough, a widow, was the fee simple owner of the house and lot in Baltimore City, designated and known as 836 North Eutaw Street.

On July 6th, 1920, she, for a nominal consideration, conveyed the said property to Daniel J. Meyler, absolutely in fee; and on the same day the said Daniel J. Meyler, unmarried, for a nominal consideration, conveyed to Bettie Wimbrough and Mary Wimbrough Soho the said property, 836 North Eutaw Street, subject to the conditions and powers therein contained; and it was provided that the property should be held in the following manner:

"To have and to hold said lot of ground and premises above described unto the said Bettie Wimbrough for and during the term of her natural life, with full power to her, the said Bettie Wimbrough, to collect and receive all income and profits issuing and payable out of said property, and apply the same to her own use and benefit as she may see fit, and to sell, mortgage, lease or in any manner dispose of the absolute estate in said property in fee simple or otherwise, or any part thereof, and to apply the proceeds of any sale or other disposition of said property to her own use and benefit; and that no purchaser dealing with the said Bettie Wimbrough hereunder shall be bound to see to the application of the purchase money or any other money paid to her in exercising the power herein; and immediately upon her death to have and to hold all or so much of said property not disposed of by said Bettie Wimbrough in the exercise of the power hereunder, unto the said Mary Wimbrough Soho, her heirs and assigns, in fee simple.

"To have and to hold the said lot of ground and premises above described and mentioned and hereby intended to be conveyed, together with the rights, privileges, appurtenances and advantages thereto belonging or appertaining, unto and to the proper use of the said Bettie Wimbrough, her heirs and assigns, in fee simple."

Both of said deeds were properly recorded on the day of their execution.

On May 16th, 1923, the said Bettie Wimbrough, for a nominal consideration, conveys said property, in fee simple, to Joseph Loeffler and Rose Loeffler, his wife. This deed recites that the grantor, by virtue of a power in the deed to her from Daniel J. Meyler of July 6th, 1920, conveys in fee simple lot 836 North Eutaw Street; and on the same day, Joseph Loeffler and Rose Loeffler, his wife, for a nominal consideration, conveys an absolute fee simple estate to the grantee, Bettie Wimbrough, in the same property, 836 North Eutaw Street. These last mentioned two deeds were properly recorded on May 17th, 1923, the day after their execution.

So far as the record title is concerned, the result accomplished by these four deeds is to place the title to 836 North Eutaw Street where it was prior to July 6th, 1920, in the defendant, Bettie Wimbrough, in fee simple. This is also the legal effect of the said conveyances, unless the contention of the appellant prevails.

The appellant contends and insists that there was an agreement between her mother and brother, the defendants, and herself, which she terms "the family agreement," by which agreement she was to have the real estate, 836 North Eutaw Street, after the death of her mother, Bettie Wimbrough, in consideration of her care of, and attention to, her said mother; or putting it in another way, that there was an agreement by and between the mother, brother and sister, constituting the whole family, for the disposition of the property of the mother, to take place after her death, and that by said agree-

ment the appellant was to become the owner of 836 North Eutaw Street, from and after the death of her mother.

This alleged agreement is equivalent to an oral contract, by the mother, Bettie Wimbrough, during her lifetime, to convey the property in such manner as to secure to the appellant a vested remainder therein, or to devise said property to the appellant by will, the alleged consideration for such conveyance or devise being services rendered by the appellant to her mother.

The absolute owner of property has the legal right to enter into a contract to execute a will in favor of the other contractng party, or to execute a deed, securing to the other contracting party a vested remainder in the property so owned; and such contracts may be enforced in courts of equity by decree for specific performance. *Mundorff* v. *Kilbourn,* 4 Md. 459; *Wilks* v. *Burns,* 60 Md. 64; *Hamilton* v. *Thirston,* 93 Md. 213; *White* v. *Winchester,* 124 Md. 524. The law, however, does not look with favor upon agreements of this character, and the contract relied on must be set out in the bill of complaint, and must be certain and unambiguous in all its terms.

In *Mundorff* v. *Kilbourn, supra,* speaking with reference to such agreements, this Court declared that "the most stringent doctrines of the court should be applied in such cases, especially where the alleged agreement is not in writing, as a protection against speculating arrangements sought to be enforced as contracts."

The proof of the agreement as alleged must be definite and certain, strong and convincing, and such as not to leave any material part of the contract to conjecture or speculation.

This Court has held in numerous cases that, upon an application for the specific performance of an unexecuted agreement, the complainants must prove, not only that the agreement was made, but must also so clearly and fully show its terms that the court can have no difficulty in knowing what they are. The bill of complaint must allege an agreement, the terms of which are clear, definite and conclusive, and the evidence must be sufficient to prove the allegations. *Mundorff*

v. *Kilbourn, supra; Stodert* v. *Tuck,* 5 Md. 19; *Carr* v. *Hobbs,* 11 Md. 294; *Semmes* v. *Worthington,* 38 Md. 318; *Hamilton* v. *Thirston, supra; Polianski* v. *Polianski,* 138 Md. 598.

We do not find the facts in this case meet the requirements as laid down by the decisions of this Court, among which are the cases above cited.

The allegation by the appellant is, that the agreement sought to be specifically enforced was a family agreement, by which she was to have the property, 836 North Eutaw Street, after the death of her mother, but she fails to allege, and the testimony fails to show with certainty the time or circumstances under which it was made or the consideration therefor. The alleged parties to this agreement were the appellant, and the two defendants, her mother and brother, and they both deny positively, in their answers and testimony, the making of any such agreement. It is true that John D. Wimbrough, the brother, testified there was an understanding that, after his mother's death, he was to have the personal property and his sister was to have the property 836 North Eutaw Street.

It is not unusual for members of a family, situated as the parties here, to talk over the disposition of property in a general way, but such a general family understanding, in the absence of clear and convincing testimony, does not create such an agreement as a court of equity will enforce.

It is contended by the appellant that the two deeds of July 6th, 1920, by which she was given the property in question, after the death of her mother, are evidence of the intention of her mother to carry out the alleged agreement.

To this we cannot assent, for the power contained in the deed from Daniel J. Meyler to the defendant, Bettie Wimbrough, by which she was given full power to sell, mortgage, lease or in any manner dispose of the absolute estate in said property in fee simple or otherwise, or any part thereof, and to apply the proceeds of any sale or other disposition of said property to her own use and benefit, when taken in connection with the testimony of the mother as to her real inten-

tion, conclusively disposes of this contention adversely to the appellant.

There is another controlling reason why the relief prayed by the appellant cannot be granted.

The alleged agreement, if sufficiently proven, is entirely oral, and comes clearly within the Statute of Frauds, which is a complete defence, unless the bar of the statute is removed by such partial performance by the appellant as would make it inequitable to deny specific performance of the agreement.

This Court has cited with approval the language of Lord Hardwicke in the case of *Lacon* v. *Mertins,* 3 Atk. 4, in which he said that the acts relied on as part performance must be such an act done as appears to the Court would not have been done unless on account of the agreement," and has held in many cases, that such acts must be clear and definite and refer exclusively to the alleged agreement. *Hamilton* v. *Thirston,* 93 Md. 219, and cases there cited.

In *Semmes* v. *Worthington, supra,* the rule is thus stated, "that the contract should be clear and definite, and the acts done should be equally clear and definite and solely with a view to the performance of the particular agreement."

It will be noted that the acts principally relied on by the appellant as part performance are expenditure of sums of money by her in making repairs and improvements to the property, while in her bill of complaint she alleges that she had made demand upon her mother for reimbursement for the money so expended by her, and that the offer made by defendants in compensation for said improvements has been entirely inadequate.

Without quoting at length from the testimony, it is sufficient to say that the proof of the agreement itself and of the acts relied on to establish part performance are so conflicting and contradictory, when sought to be applied to the well settled principles governing cases of this character, that a court of equity should not grant the relief prayed.

*Decree affirmed, with costs.*