# MARGARET MARDEN *v.* WILLIAM G. SCOTT et al., EXECUTORS.

### [Nos. 95, 96, October Term, 1927.]

*Decided February 15th, 1928.*

The causes were argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*John Phelps,* for the appellant.

*John B. Deming,* with whom was *Robert R. Carman* on the brief, for the appellees.

PARKE, J., delivered the opinion of the Court.

William H. Scott died testate in Baltimore on January 5th, 1926. He had executed and delivered to the appellant certain instruments of writing, under which she asserted title to the proceeds of a policy of insurance on his life in the Travelers Insurance Company for the sum of five thousand dollars and those of a similar policy in the Equitable Life Assurance Society for a like sum, and an equitable lien on two other policies on his life in the latter company to secure an alleged obligation of Scott to her in the sum of twenty thousand dollars. The executors of the assured denied the appellant had any claim to these policies or their proceeds, and demanded their payment as part of the assets of the testator's estate. The policies were severally payable to the wife of the assured, if living at the time of his death, and, if not, then to his executors, administrators, or assigns. The pri-

mary beneficiary died on November 23rd, 1916, and at the assured's death notice was given the insurance companies of the conflicting claims, and they each filed a bill of interpleader bringing the appellant and the executors into court for an adjudication of their rival interests, and, by consent, the proceeds of the two policies were paid into court, where the fund remains awaiting the result of the litigation. The decree in each of the interpleader proceedings made Margaret Marden, appellant, the plaintiff, and the appellees, who are the three executors, the defendants. The chancellor heard the evidence and decided in favor of the appellees, and directed the proceeds of the policies be paid to the executors. Although there were two separate suits they were heard as one, and then a decree passed in each cause. The appellant prayed an appeal from the decrees, and they are both brought up on one record.

The controversy is over two paper writings which are admittedly genuine, which were severally delivered, at the time of their respective execution, by William H. Scott, the testator, to the appellant, who kept them in her possession until his death, and then made them the basis of her original bill of complaint against William G. Scott, Samuel W. Scott and John C. Scott, in their several capacities as individuals, and as trustees and as executors of the estate of William H. Scott. By this last mentioned bill of complaint, Margaret Marden seeks to have these two paper writings, and a third of later date, enforced by way of specific performance against the estate of the said testator, whether in the hands of his executors or trustees. The decree in this cause was also adverse to the complainant, who has brought it up on appeal, which was argued as one case with those first mentioned. The causes have so much in common that it is difficult separately to discuss them; and we shall begin with the questions on the appeals from the decree passed as a result of the interpleader.

In the interpleader proceedings the appellant's testimony was taken subject to exceptions, and a motion was made at

the close of the evidence to exclude her testimony, but the chancellor overruled the motion, and no exception was taken to his action by the appellees; so her testimony must be considered with that of the other witnesses. Code, art. 5, sec. 40.

The proof is that the appellant and her husband, Dr. Tilghman B. Marden, lived in Baltimore, and were on friendly terms with William G. Scott for some years before his wife's death in 1916. The appellant was then living with her husband and two children, and was about thirty-five years old, and William H. Scott was around sixty-seven years of age. The appellant's testimony is that within ten days after Mrs. Scott's death, at her home and in her husband's presence, William H. Scott had told them of the two insurance policies on his life and payable at his death, and promised to give these two policies, which are the ones now in controversy, to appellant if she would "take care of him and look after him." The appellant further stated that, as a result of this promise, she undertook and did look after and take care of him from that time until she was prevented by his family, and but for this interference she would have until his death.

The period covered by these services extended from the year nineteen hundred and sixteen to some time in nineteen hundred and twenty-five, or about one year before his death in January, 1926.

Scott remained in his own home until October, 1917, when he removed to the Walbert Apartments, where he lived until May, 1918, and from there he went to a boarding house, and lived in it and two others until his death. He was confined frequently to his room, particularly during the winter, when he suffered from a chronic cold, was often indisposed, and was subject to a severe pain in his back, which was relieved by rubbing, and he craved company. The appellant did what he desired to relieve him of these conditions, by visiting and ministering to him frequently in his room when he was

·unable to go out, and by being his companion when he was well. The value of these services, and particularly her companionship, is not nominal, but is difficult to estimate, as the services rendered were chiefly of an intangible nature and so not susceptible of easy evaluation. However, we are dealing with an express oral contract, and, in the absence of fraud in the equitable sense, it is not the value of the thing ·promised that entitled the promisee to a specific performance by the promisor, but the promisee's complete performance, or ability, readiness, and willingness to perform, in the event his performance is prevented, in whole or in part, by the party to whom it is due. *Pomeroy on Specific Performance* (3rd Ed.), secs. 194-196. The parties to a contract are free to fix any form of lawful compensation as a reward for the doing of anything not illegal. And so here, if the express contract be shown to have been made and performed in part, and its complete performance prevented, despite the ability, readiness, and willingness of the appellant, by the action of William H. Scott, the court, where as here the consideration is not of nominal value, has, in the absence of proof of fraud, no concern with the nature of any lawful thing done, its monetary value, or sufficiency as consideration for the promise made by William H. Scott. There is no sufficient proof in this case that there was either fraud or duress in the making of the contract, and that these services were performed to the complete satisfaction of the promisor there can be no doubt, nor can there be any question that their interruption was not caused by any default of the appellant. The weight of the evidence makes this conclusive. Nor is there any proof that the express contract was not made as narrated by the appellant. The other party to it is dead, and the only other person present at its making is the appellant's husband, who deserted her on March 27th, 1917, and from whom she obtained, on August 26th, 1920, an absolute divorce on the ground of desertion. The effect of the nonproduction of the former husband as a witness for the wife loses its adverse significance from the con-

sideration that he was subject to the process of the court and was as accessible to one side as to the other, and was used by neither. However, the testimony of the appellant does not stand alone. It finds corroboration in the subsequent relation of the parties, and the declaration of the dead man made while the services were being rendered, and by a statement made a short while before his death, when he said that "hell and damnation" could not keep her out of that insurance. The circumstance that the declarations were usually accompanied by expressions indicative of his having provided for appellant by a testamentary paper are in accordance with the actual situation. The promise was that appellant should get the two policies payable at his death, and the method of the fulfillment of this promise could be by assignment or by will. So it be kept, it was immaterial to the appellant how the promise be performed, and the most important corroboration of the appellant's statement of an express contract is found in the first testamentary paper on the record.

This paper was written in a boarding house where Scott was sick, and the appellant stated it was executed in performance of Scott's previous promise to give her the two policies of life insurance for her services. The only persons who had any connection with this document were Scott, the appellant, and Virginia Ginn, the keeper of the boarding house. According to the appellant's testimony, Scott began to write the instrument on a sheet of paper with "Atlantic City, N. J." printed at the top, but he was unable to continue and requested the appellant to complete the writing, which she did, and then Scott signed the document, Mrs. Ginn witnessed his signature, and Scott delivered it to the appellant who kept it in her possession. The writing was of this tenor:

"Atlantic City, N. J., November 25th, 1918.

"I bequeath to Margaret Marden all money in bank in my name, also personal belongings, furniture in storage, etc., in my name, also policies Travelers', $5,000, Equitable, $5,000, policies in safe deposit.

"Wm. H. Scott,
"Virginia Ginn.

"November, 1918."

The two policies of insurance were not actually delivered to the appellant, nor endorsed so as to be payable to her, but were in a safe deposit box in the Calvert Bank, where they remained until about 1922-23, when Scott took them and placed them in the safe at the office of the business in which he was interested, and there the policies were found after his death. Scott informed the appellant where the policies were on deposit, at the date of this paper, and gave her one of the two keys to the box, with the statement that she could use the box, and that she could get the policies when she wanted. She never did use the box, nor saw its contents. The money in bank was not given to the appellant, and never passed into her control. She was not even told the amount, and all that Scott did was to meet her at the depository and inform her that one of its directors had advised against putting the deposit to their joint account, and the appellant acquiesced in the conclusion that it was not a good thing to do, as Scott would not be able to draw on such an account without the appellant's signature. Of all the personalty mentioned in the paper writing of November 25th, 1918, Scott delivered to her a part of the furniture in storage and kept the rest for himself.

It was said, in the decision of this court on the former appeal between the parties, with respect to the sufficiency of the bill of complaint, that this paper writing was "on its face testamentary in form, and ambulatory in effect." *Scott v. Marden,* 153 Md. 1. The evidence does not overcome this presumption, arising from the wording of the instrument. The appellant's explanation that she used the word "bequeath," because she thought it would "sound like a legal term" is not sufficient. Scott was an experienced man of affairs, and he understood the word in its legal and popular usage, since he requested Mrs. Ginn to witness the paper as his will. The instrument could not operate as a will, because there was but one witness. Its value in this case is purely evidential. It corroborates the testimony of the witness as to the express contract between Scott and herself, since by its terms it attempted to provide for the transfer to her of the

promised reward at his death. Further, Scott gave her the paper and charged her to put it on deposit. She believed and acted upon the belief that this document secured to her the proceeds of the two policies as agreed.

The appellant's testimony in respect to the formation of the express contract is uncontradicted. With respect to the circumstances attending the execution of the paper, her recollection is not in accord with that of its witness, Mrs. Ginn. The appellant testified that Mrs. Ginn was present and heard the conversation between her and Scott with respect to the preparation and contents of the paper, and that Scott had not used the word "will" with reference to the instrument. But Mrs. Ginn said she was not there, and all that was said to her was by Scott, who requested her to witness his signature to a will. This difference in testimony is not material, and does not seriously militate against the accuracy of the appellant's evidence, because what she stated the witness heard is precisely what is found in the paper writing, and in accordance with the true nature of the document. If Mrs. Ginn's version be accepted, the paper still speaks in substantial accord with what the appellant testified occurred.

Nothing will be gained by an extended statement and analysis of the evidence. It is enough to say that the court has carefully considered all the proof, and is convinced that the clear weight of the evidence supports the position of the appellant, and that upon the principles stated in *Scott v. Marden*, 153 Md. 1., she is entitled to the proceeds of the two life insurance policies mentioned.

2. The appellant's second contention is that the remaining two insurance policies are likewise affected by a trust for her benefit as against his personal representatives and those claiming these policies with notice or as volunteers. She based this trust upon a testamentary paper, duly executed on October 7th, 1920, and witnessed, and which, omitting the usual conclusion and signatures, was as follows:

"In the name of God, amen.

"I, William H. Scott, of the City of Baltimore, being in health and of sound and disposing mind, mem-

ory and understanding, do make and publish this as and for a codicil to my last will and testament by me heretofore made, dated December 4, 1918.

"I am desirous to make suitable provision for the comfort of my esteemed and faithful friend, Margaret Marden, at present residing at 2313 N. Charles Street in the City of Baltimore, and I hereby give, devise and bequeath to said Margaret Marden the sum of twenty thousand dollars ($20,000.00) to be paid to her out of my estate absolutely, provided she shall survive me and shall not have married during my lifetime. My life insurance and my interest in certain bonds shall first be applied to pay to her the said sum of twenty thousand dollars, which I think can be done without interference with the business affairs mentioned in my will.

"I hereby confirm my said will, except as modified or changed by this codicil thereto, by this gift to Margaret Marden if she survive me and shall not have married during my lifetime."

The proof is that this paper writing was drawn by the late Major James W. Denny, of the Baltimore bar, at the request of Scott; executed in the office of its draftsman; delivered to Scott, and then to the appellant, who kept it in her possession until after Scott's death, when she found that it had been revoked by a later will of November 3rd, 1920, which made no provision whatsoever for the appellant.

The testimony on the part of the appellant is that Scott, who had grown fond of her and had sought her hand, desired to prevent her contemplated marriage to a party to whom she had become engaged after her divorce, or to any other person. The theory is that the appellant broke off her engagement and remained single as a result of a contract between Scott and herself that if she remained unmarried until his death she would be paid twenty thousand dollars in accordance with the provisions of this codicil. This codicil was operative as a testamentary paper, but as such it was revocable, and when revoked it became a nullity. Any one receiving such a paper

into her custory was chargeable with notice of its character-istics and of its ambulatory limitations. The fact, therefore, that this codicil was put in the hands of the appellant, with knowledge of its contents in her favor, was entirely consistent with its testamentary effect, and that she was a beneficiary through the bounty and favor of the testator, who desired her to keep the custody of the document, with notice of the condition upon which it became effective. If, however, the codicil imported more than its text, and was, in addition, the performance of a valid contract between its maker and the beneficiary, then the formation of such an antecedent contract must be shown by competent evidence, as was done by the proof before the chancellor in respect to the first paper considered. The death of one of the parties, the danger of fraud and of perjury, and the temptation to distort and misrepresent facts under the influence of cupidity, impose upon the proponent of a prior contract the burden of establishing it by clear and positive proof. If, therefore, upon all the evidence, doubt exists as to the entire contract or even in any of its material terms, a court of equity will not afford relief by regarding the property in the hands of the personal representatives, heirs, devisees, volunteers, or those affected by notice, as impressed with a trust in favor of the promisee, so that the property belonging to any within the classes named may be compelled to be applied by such owners to the performance of the contract.

The record fails to show any contract whatsoever between the appellant and Scott with respect to an agreement of the appellant not to remarry during the life of Scott, and of an undertaking on his part to pay her twenty thousand dollars, if she remained single. All that appellant testified on the subject was that Major Denny, who was Scott's lawyer, sent for her and said: "Mr. Scott was going on so terrible; he was carrying on and had been to see him, and that he wanted to make out this paper so I would not be in want after he died, and if I would sign this paper and agree that I would not marry during his life, he would see that I was taken

care of the rest of my life. Q. You are referring to the paper called the codicil? A. In a general way I am telling about what happened with Mr. Cameron and the fuss."

Such a conversation, without any proof of Major Denny's authority to make an offer to appellant in behalf of Scott, is too slight and unsubstantial a foundation to infer a contract. What the nature and contents of the paper the appellant was to sign are not disclosed, and that she signed a paper is not shown. There is nothing to indicate that the draft of the codicil was even prepared and laid before the appellant for her information. Neither the amount of money she was to be paid, nor the manner in which she was to be taken care of during the rest of her life, was discussed, much less agreed upon. When and how did the appellant and Scott agree to the application of his life insurance to the payment of the gift of twenty thousand dollars? In short, there is no evidence of a prior contract between the appellant and Scott in pursuance of which he executed the codicil in question. Inferences of a contract from conjecture and speculation do not supply the failure of evidence. It follows that the codicil cannot be accepted as having been executed in accordance with and as embodying the terms of a subsisting contract between the parties, and appellant has no right to have it enforced as a contract creating an equitable lien on any of Scott's estate. *Semmes v. Worthington,* 38 Md. 298, 318; *Hamilton v. Thirston,* 93 Md. 213, 218; *Hearn v. Ruark,* 148 Md. 354, 358.

By stipulation all of the testimony in the record in Nos. 95 and 96, except the testimony of the appellant, are made a part of the record of No. 97. With this exception and some additional proof, the record in No. 97 is the same as in Nos. 95 and 96. The testimony of the appellant was offered in No. 97, but was excluded by the chancellor, and there was an exception by the appellant taken to that ruling. The offer of a mass of testimony in bulk is not to be countenanced, but the ruling was apparently not upon that point but on that of the disqualification of the witness. Since all

of appellant's testimony was admitted by the chancellor in the interpleader causes, and we were obliged to consider it there with reference to questions which are identical with those on the third appeal, we have concluded to consider the admissible portions of appellant's testimony in the inter-pleader cases to be before us in passing upon the three paper writings involved on the third appeal. And in order to avoid useless repetition, it is thought best to proceed with this opinion so that all questions on the three appeals will be covered. The advantage of this method comes from the fact that the first two questions on the third appeal concern the effect to be given the paper writing of November 25th, 1918, and the codicil of October 7th, 1920; and so, without further comment, except to note that whatever differences there are on the proof on the third record do not affect the result, we hold that the paper writing of November 25th, 1918, gives the appellant the right to receive the proceeds of the two insurance policies, but that the codicil of October 7th, 1920, has been revoked and that the appellant acquired no rights thereunder.

3. The third paper, which was delivered to the appellant at the time of its execution, and which she held in her possession, was of this form:

"Baltimore, October 15, 1920.

"In consideration of five dollars and other good and valuable considerations paid me, I hereby agree and promise to pay to Mrs. Margaret Marden of Baltimore the sum of twenty-five dollars weekly from this date during my natural life. Provided she shall not marry again and if she shall marry, this obligation to cease.

"Witness my hand and seal this 15th October, 1920.
                    "William H. Scott.  (Seal)
"Witness: James W. Denny."

The obligor of this instrument paid the stipulated weekly amounts to the appellant up to January 1st, 1923, and then stopped. It is a writing obligatory, whose seal imports a

consideration, and whose terms set forth one, as the obligation to pay depended upon the appellant not marrying again. *Bostick v. Blades,* 59 Md. 231. The appellees have shown no sufficient reason to declare the obligation unenforceable. The appellant remained unmarried until the death of the obligor, and she is entitled to the amount unpaid. As the amount due the appellant will be paid to her direct in the interpleader causes, and the amount due under the writing obligatory is but an indebtedness of testator's estate, and there is no proof that the declaration of trust made by Scott was while insolvent or in fraud of creditors, there does not seem any reason why a court of equity should retain jurisdiction in the proceedings under the original bill filed by the appellant against the appellees and now No. 97 Appeals of the October Term, 1927.

> *Decree in Nos. 95 and 96 reversed with costs, and cause remanded for decrees in conformity with this opinion.*