## CORA I. NEAL, ADMINISTRATRIX, *v.* LAURA C. HAMILTON.

[No. 50, April Term, 1930.]

*Decided June 24th, 1930.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*John H. Skeen* and *J. Britain Winter,* for the appellant.

*J. Cookman Boyd,* with whom was *Emil Budnitz* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

George W. Ware died intestate, leaving surviving him five nieces and a nephew as his sole distributees and next of kin. His estate consisted of leasehold property and other personalty, which his niece and administratrix converted, and, after discharging all debts and the charges incident to the administration, there remained for distribution between $14,000 and $15,000. The nephew and nieces asserted that they were entitled as the next of kin to be distributed the whole of this residue, while Laura C. Hamilton claimed that the entire fund was distributable to her by force of a subsisting contract with the intestate. Because of these conflicting demands Laura C. Hamilton began a proceeding in equity against the administratrix to establish her right to the estate for distribution and to obtain a decree for its delivery to her. The parties took their testimony, with the exception of a single witness, before the chancellor, who later passed a decree adjudging the plaintiff entitled to the amount of the estate for distribution.

The evidence showed that the intestate died on July 5th, 1928, at the age of seventy-five or seventy-six years, and that his wife, who was the grandmother of the plaintiff, had died three years before, leaving the old widower alone in the home. He made successive and unsuccessful attempts to put his domestic affairs upon a permanent basis, and finally, he had a German girl, who was alien in speech and in cooking. In order to put an end to the discomfort her service entailed, and to secure at once a permanent housekeeper and congenial companion for the closing days of his life, the intestate

sought the plaintiff, whom he held in affectionate regard beyond that entertained for his blood relatives.

At this time the plaintiff lived in New Jersey with her sister, where she supported herself and her mother. The plaintiff was thirty-six years of age, and was employed as a waitress in a restaurant, and her weekly earnings ranged from $35 to $55, out of which she paid her sister $20 weekly for the board of herself and mother. In exchange for the existing regular hours, fair wages, with no executive responsibility, the dislocation of her family and social ties, and the surrender of her independence in service and of her freedom of movement, the evidence affirmativly established that the intestate offered, and she accepted, a contract, which she wholly executed, but he partially performed, and left the major part breached at the time of his death.

The terms of the contract were adjusted so as to meet the problem presented by the plaintiff's care and support of her mother, and, while the contract rests upon parol, a close scrutiny and weighing of all the testimony compels a conclusion in agreement with the sound and informed judgment of the able chancellor.

The disfavor with which the court regards an oral agreement for services which are to be compensated after the promisor's death by devise and bequest, and the necessity that the terms of such a contract be not only certain and definite but be also affirmatively established by clear and convincing testimony, are based upon weighty practical considerations and grounded in a wise policy which should be consistently followed. *Mundorff v. Kilbourn,* 4 Md. 459; *Soho v. Wimbrough,* 145 Md. 498, 510; *Semmes v. Worthington,* 38 Md. 298, 318. Where, however, the conditions imposed upon the plaintiff are met, as in the instant case, the rule is not relaxed, but enforced, by the determination that such a contract was made.

The testimony in the record is not without points of conflict, but, omitting a detailed recital and analysis, the evidence conclusively proves that, in consideration of the plain-

tiff's promise to go to Baltimore and serve the intestate until his death as cook, housekeeper, nurse, and companion, the intestate promised to give the plaintiff $12 a week as spending money, provide the plaintiff and her mother with board and lodging in his home and, at his death, give to the plaintiff all his property. The period and all the obligations of the contract are complete, plain, precise, and specific, and the consideration for the intestate's promise is valid and valuable. The plaintiff gave up a less onerous employment at a greater weekly remuneration, and became the servitor of the intestate for his life, which was a certain term but of unforeseeable length, so the only financial benefit of the new employment over her existing one lay in the prospective and speculative net amount of the intestate's estate at his death.

According to the weight of the evidence, the plaintiff went to the home of the intestate as contemplated by the contract, and fully performed her promise for a period of about twenty-one months, when he died. During this service the intestate gave the plaintiff and her mother board and lodging at his home and paid her the weekly sum of $12. At his death the contract was fully performed by the plaintiff and by the intestate, except that he died without making any testamentary or other documentary provision providing for his net estate being distributed or paid to the plaintiff.

The contract, although oral, was supported by a valuable consideration and was fully executed by the plaintiff, whose acts of performance, under the circumstances, were of such a nature as to point unequivocally to some contract other than a mere agreement to pay the plaintiff the weekly sum of $12 and to furnish her and her mother with board and lodging. The acts of part performance are referable to and consistent with the contract alleged, and it would unquestionably be inequitable, under the circumstances of this case, where the intestate had induced the plaintiff to change her residence and employment status at a substantially diminished weekly reward, to deny to the plaintiff the part remaining unfulfilled by the intestate, when that part is the portion of the consideration which was the moving inducement for the

plaintiff to make the promises which she has performed in the reliance and anticipation of the intestate faithfully discharging his promise.

While the performance of ordinary services will not take an oral contract out of the statute of frauds, if the value of such services can be ascertained with reasonable accuracy in an action at law and adequately compensated by a recovery of damages, yet where it is impossible to restore the plaintiff to his original position by any legal remedy, the essential condition of equity jurisdiction in case of part performance is fulfilled, and the rendition of the services will take the parol contract out of the statute of frauds. See *Brown on Statute of Frauds,* secs. 273-276, 438, 452, 483. The distinction is well expressed by *Pomeroy on Specific Performance* (3rd Ed.), sec. 114: "But if the services are of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, and it is evident that the parties did not intend to measure them by any such standard, then the plaintiff, after the performance of these services, could not be restored to the situation in which he was before, or be compensated by any recovery of legal damages." In the instant case the consideration was not mere labor and services, which may be estimated and their value liquidated in money so as necessarily to make the promisee whole on rescinding the contract. The promisor was an old man, and afflicted with incurable and recurrent heart attacks. He craved companionship and affection, and a comfortable home brightened by the presence of the plaintiff, whom he regarded as a natural grandchild. The plaintiff dutifully supplied what he sought, and it is impossible to estimate their value to the intestate by any pecuniary standard. Furthermore, the plaintiff was a waitress in a restaurant, whose weekly income varied from $35 to $55 a week, and, with such a wide weekly fluctuation in the performance of this purely menial labor, which is not comparable in nature or value to the personal services which she rendered the intestate during his life, a court of law would have no power to restore the plaintiff to the situation in which she was before the contract was made, nor be

452

able to fix upon any practical measure of damages for the breach of the contract. In a word, anything short of a performance would be inequitable. See note, section 114 (b), *Pomeroy, Spec. Perf.* (3rd Ed.), pp. 279-280, and notes pp. 490-491; *Rhodes v. Rhodes,* 3 Sandf. Ch. (N. Y.), 279, 284; *Davison v. Davison,* 2 Beasley (13 N. J. Eq.), 246; *Fry on Spec. Perf.* (6th Ed.), secs. 245, 246, 1014; *Marden. v. Scott,* 154 Md. 414, 417-419; *Whitridge v. Parkhurst,* 20 Md. 62, 85; *Frisby v. Parkhurst,* 29 Md. 58, 68; *Semmes v. Worthington,* 38 Md. 292; *Mundorf v. Kilbourn,* 4 Md. 463; *White v. Winchester,* 124 Md. 518; *Scott v. Marden,* 153 Md. 13; *Hamilton v. Thurston,* 93 Md. 213, 219.

*Decree affirmed, with costs to the appellee.*