CHARLES WESLEY WEAVER *v.* CHARLES J. KING, ADMINISTRATOR, ET AL

[No. 78, October Term, 1944.]

*Decided January 11, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, and HENDERSON, JJ.

*Emanuel Klawans* and *Marvin I. Anderson* for the appellant.

*Bird H. Dolby* for the appellees.

COLLINS, J., delivered the opinion of the Court.

Charles Wesley Weaver, now seventy-three years of age, filed in the Circuit Court for Anne Arundel County an amended bill of complaint alleging that for about thirty-five years prior to 1938 he resided in the District of Columbia and for about one year prior to that time he had been receiving an old age pension of thirty dollars ($30) per month, dependent upon his residence in the District of Columbia. He was also receiving additional income for attending to the furnace of the house where he roomed in Washington. He alleged that in 1938 his brother, William Morgan Weaver, became separated from his wife and desired to move from Washington to

his house at Chalk Point in Anne Arundel County and that he did not desire to live there alone; that at that time William made a bargain with the plaintiff that if he would surrender his residence, pension and employment in Washington, leave there and move with him to Anne Arundel County and live with him, he, William M. Weaver, would support the plaintiff for the latter's lifetime; that in consideration and on condition of this promise, the plaintiff surrendered his residence, pension and employment in the District of Columbia, moved with his brother, William, to Anne Arundel County where the two lived together; that he rendered services to his brother as housekeeper, caretaker of the house and grounds and as personal assistant without compensation until the death of William Weaver on January 2, 1944, when he died a resident of Anne Arundel County, Maryland, leaving a large personal estate and owning the house there. He further alleged that his brother was survived by his widow, Edna Weaver, and his daughter, Virginia Cave, as his only heirs at law; that letters of administration on his estate have been granted in Anne Arundel County. Since the death of William Weaver, his daughter, Virginia Cave, has died. He further alleged that William Weaver told him that he had provided for the plaintiff's support for life in a will located in a specific safe deposit box and showed the plaintiff where the keys to the box were kept, but when this box was opened in the plaintiff's presence, it contained no will or other provision for his support and as far as he knows, William Weaver died intestate. Plaintiff alleges that he is destitute and has no means of support and that the reasonable cost of food, lodging, clothing, medical attention, and sundries is one hundred dollars ($100) per month. He asked that the real and personal estate be charged with the cost of reasonable maintenance and support for life; that the real and personal estate be charged with the expenses of litigation and reasonable counsel fee; that the administrator be enjoined from distributing the net proceeds of the estate, and that Edna

Weaver and the administrator of Virginia Cave be enjoined from receiving any of the net proceeds of the real and personal estate of his brother or from alienating or encumbering any of this pending the determination of the suit. He also asked for other and further relief. Answer was filed denying the material allegations of the bill and after testimony was taken in open court, the Chancellor by decree dismissed the amended bill of complaint, and an appeal is taken to this Court from that decree.

In order for the appellant to recover, it is necessary that he prove the contract, bargain, agreement, or promise based on a consideration. This Court said in the case of *Neal v. Hamilton,* 159 Md. 447, at page 449, 150 A. 867, at page 868: "The disfavor with which the court regards an oral agreement for services which are to be compensated after the promisor's death by devise and bequest, and the necessity that the terms of such a contract be not only certain and definite, but be also affirmatively established by clear and convincing testimony, are based upon weighty practical considerations and grounded in a wise policy which should be consistently followed. *Mundorff v. Kilbourn,* 4 Md. 459; *Soho v. Wimbrough,* 145 Md. 498, 510, 125 A. 767; *Semmes v. Worthington,* 38 Md. 298, 318." *Hardesty v. Richardson,* 44 Md. 617, 22 Am. Rep. 57; *Dowell v. Dowell,* 177 Md. 370, 9 A. 2d 593. The proof of an alleged agreement of this sort must be definite, certain, strong, and convincing and such that no material part thereof is left to conjecture and speculation. *Soho v. Wimbrough,* supra, 145 Md. at page 510, 125 A. 767.

By reason of Code, Article 35, Section 3, the plaintiff was denied the right to testify as to any transaction had by him with the deceased and was therefore unable to testify as to the alleged agreement or promise made by his brother. There is no other witness who heard such an agreement or promise made, or heard the deceased say that he had made such an agreement or promise.

It is not disputed that the two brothers lived together in Anne Arundel County from 1938 to the death of Wil-

liam Weaver in 1944. It is also shown that at the time that Charles Weaver left Washington, he was receiving thirty dollars ($30) per month from the Public Assistance Division of the Board of Public Welfare of the District of Columbia and that he earned six dollars ($6) per month for attending to the furnace in the boarding house where he lived; also that shortly prior to September 1, 1938, William Weaver and his wife separated and William and Charles moved to Anne Arundel County. By a witness, Mrs. Laura M. Owens, who lived near them in Anne Arundel County, the plaintiff showed that the deceased did his own marketing, cooking, and cleaning up the kitchen and that the plaintiff cleaned up the bedrooms, made up the beds and did the sweeping and dusting and at times cut the grass; also that the deceased told Mrs. Owens that the plaintiff was the only companion he had down there and that he had gone to Washington to get his brother and further said: "I cannot stay down there without him, I am going to take care of him as long as he lives. We can't stay here long for I could not stay here without the 'big boy.' " Further, that "I have to go back to see what the 'big boy' is doing." She testified that the deceased always spoke of Charles as the "big boy." She said that he paid for the laundering of Charles' clothes and that he was taking care of him. She further said that William told her that the place in Anne Arundel County belonged to Charles if anything happened to him; that Charles has a home and he would see that he had a home as long as he lives. She further testified that the day that the deceased was taken away in an ambulance during his last illness, he told her that he was leaving and he wanted her to see that his brother had attention while he was away and to see that he did not want for anything, for everything there is left to him and that he wanted Mrs. Owens to look after him and see that he was well taken care of. She does not know whether the plaintiff heard any of this conversation between her and the deceased. Another witness, W. L. Eagle, testified that the deceased told him that he in-

tended to leave Charles the place in Anne Arundel County. All of this testimony is as to the intent of the deceased and does not show any promise or agreement based on the promise. Although there is evidence that the appellant performed certain services, there is no evidence of the alleged promise or bargain on the part of the deceased to support the agreement we are asked to enforce. The income tax return of the deceased was filed showing that he claimed his brother, William as a dependent. On cross examination the plaintiff admitted that he tried to get the payments from Washington transferred to Maryland and further said that he was told by the representative of the Washington Board of Welfare that at any time he could not take care of himself, he could come back to Washington and in one year have them renewed. He said he did not think he would be back there within a year but made this arrangement in case anything should happen. A letter offered in evidence dated October 19, 1938, also showed that the plaintiff told the Washington Public Assistance Division that he was temporarily staying with Mr. William Weaver. It therefore appears doubtful that a definite contract or bargain had been made at that time.

No evidence was offered by the defendant.

From the evidence, it appears that the two brothers came to Anne Arundel County to live together. The services which the plaintiff rendered are those which would be rendered ordinarily by one member of a household to another. The fact that the deceased showed on his income tax return that the plaintiff was a dependent tends to bear out defendant's contention that he was not living and working at the house under an agreement, promise, or contract, but that his brother was taking care of him. The question before us here is not what the brother intended to do, but what legally enforceable contract was made by the parties. For this Court to enforce such a contract it must have been made by the deceased. We cannot make the contract for him although he may have intended to make provision for his brother

and did not do so. In order for a Court to enforce a contract, it is, of course, necessary that there be a contract.

Plaintiff relies strongly on the cases of *Hardesty v. Richardson*, 44 Md. 617, 22 Am. Rep. 57, supra; *Devecmon v. Shaw*, 69 Md. 199, 14 A. 464, 9 Am. St. Rep. 422; *Steele v. Steele*, 75 Md. 477, 23 A. 959; *Evans v. Buchanan*, 183 Md. 463, 38 A. 2d 81. The difference between those cases and the one at bar is that the agreement or contract and the making of a promise in those cases were proved by definite evidence while in the case before this Court, although there is evidence that the deceased intended to provide for his brother, there is not the slightest evidence of a contract or agreement between them or that the deceased made any promise to the appellant on which the alleged contract, agreement, or bargain is based. From the facts that the letter of October, 1938, offered in evidence by the appellant, and written after appellant had moved to Anne Arundel County, indicated that no permanent plan for the plaintiff had been worked out, and further as the plaintiff testified that he tried to have his payments continued by the Board of Welfare and get them transferred to Maryland in case anything should happen, appellant's testimony more or less negates the making of a contract or bargain.

There being no evidence offered to prove a legally enforceable contract, this Court is powerless to carry out the alleged intention of the deceased. The Chancellor was correct in dismissing the bill of complaint.

For the purpose of awarding costs, the appellant objects to the opinion of the Chancellor being inserted in the record in this case. By Code, Article 16, Section 198, in all cases in courts of equity, except in Baltimore City and Prince George's County, the Chancellor is required to file an opinion in respect to any final decree or decretal order whenever such decree or order shall be passed upon argument, oral or in writing, on the part of any of the parties in such cause. When an opinion is filed in an equity case, it should be inserted in the record or in

some way brought to the attention of this Court, as such opinions, particularly the able one in the case at bar, are very helpful to this Court in the review of decrees. *Title, Etc., Company v. McCulloh,* 108 Md. 48, 53, 69 A. 434.

*Decree affirmed, with costs.*