## GENEVA M. NICHOLS, Widow, et al. *v.* DANIEL REED

[No. 108, October Term, 1945.]

318

*Decided April 12, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, and HENDERSON, JJ.

*W. Hyland VanSant* and *K. Thomas Everngam* for the appellants.

*Wesley E. Thawley* and *W. Brewster Deen* for the appellee.

.GRASON, J., delivered the opinion of the Court.

James A. Nichols, late of Caroline County, died October 22, 1941, seized and possessed of certain real estate, including the property involved in this case. No will of his was found and letters of administration were issued by the Orphans' Court of Caroline County and the estate in that court has been fully administered.

A bill in equity was filed in the Circuit Court for Caroline County, in which all of the heirs of the decedent were made parties, praying for a sale of the real estate and a distribution of the proceeds amongst the parties entitled. The property in question was included in the proceeding. Appellee filed a cross-bill in the case, against the heirs at law of the decedent, to which a demurrer was sustained. He thereafter filed an amended cross-bill, to which a demurrer was filed and overruled by the court, from which ruling this appeal was taken.

The facts alleged in the bill and admitted to be true for the purpose of the demurrer, are as follows: Daniel Reed was reared in the home of the decedent and treated by him as a son, and he treated the decedent as a father. In 1932 Reed married, and the couple went to live in Federalsburg, Maryland. In the summer of 1938 the decedent asked appellee to persuade his wife to give up their home in Federalsburg and come to his home and take care of him and his home during the remainder of his life, which was refused. The decedent at that time was a widower, about seventy-one years of age, in failing health, and needed someone to look after him and his home. At that time Hattie Reed, the wife of Daniel Reed, was employed at the Excelsior Pearl Works, at a salary of $50 a month. Thereafter, in the month of August, 1938, the decedent again came to the home of Reed and proposed that "if he would give up his home and persuade his wife, Hattie Reed, to give up her employment at the Excelsior Pearl Works and both of them move to the home of the said James A. Nichols and care for him and his home during the remainder of his life, he, the said James A. Nichols, would provide all necessary food for himself, your complainant's wife, Hattie Reed, to prepare the same for him and give him the necessary care and attention needed during his declining years, that he, the said James A. Nichols, would give to your complainant the property where he then resided near Federalsburg, Caroline County, Maryland, being Tract No. 1 described in the Bill of Complaint in this case, and would execute a will in his favor therefor, and that he, the said James A. Nichols, would pay the taxes upon said property for the remainder of his life." At about September, 1938, upon further reiteration of the proposition of said decedent as above set forth, to the effect that "he would execute a will in your complainant's favor for the aforesaid property, your complainant did persuade his wife, Hattie Reed, to give up her employment and go with your complainant and live on said property in question with the said James A. Nichols and

prepare his food, take care of his home and otherwise render him all necessary attention during his declining years, as the said James A. Nichols had requested." That appellee and his wife did give up their home in Federalsburg, and Hattie Reed did give up her employment, and they went to the home of decedent on September 3, 1938, lived there with the decedent until August 28, 1941, and that Reed "carried out his agreement in good faith and his wife, the said Hattie Reed, at the request of your complainant, did care for the person and home of the said James A. Nichols and rendered him all necessary care and attention." That during that period the decedent "steadily declined in health and suffered a paralytic stroke, which necessitated additional nursing and care, all of which services were performed by your complainant, and which said services continued uninterruptedly until on or about August 21, 1941, * * * at which time the said James A. Nichols informed your complainant of his intended marriage and requested your complainant to vacate from said property and grant him the privilege of living there with his intended wife for the remainder of his life, stating at the same time, however, this arrangement would not change matters as he had everything fixed to carry out the provisions of his original agreement. That your camplainant acceded to this request and thereafter, on or about August 28, 1941, the said James A. Nichols did become married to one Geneva Merrick, and the said James A. Nichols departed this life on or about October 22, 1941."

That demand was made upon the defendants, or their attorney of record, to convey said real estate in question to complainant, but they have failed and refused to do so. That complainant represents that he has performed all the agreements on his part entered into with the said James A. Nichols, deceased, to the full satisfaction of said decedent, and the consideration on his part has been fully performed. and he, therefore, alleges that the real estate in question belongs to him.

After setting out the heirs of the decedent, the amended cross-bill prays: (a) That a decree may be passed decreeing said tract No. 1 described in the original bill of complaint, and which said tract is the subject matter of this cross-bill, to be the property of your complainant; (b) that a trustee may be appointed by the court to convey said property to complainant; (c) for further relief. The grounds of demurrer to the amended cross-bill are: (a) Want of equity in appellee; (b) that the amended cross-bill is vague, indefinite and uncertain and does not allege with sufficient particularity and clearness such a cause as entitles him to the relief prayed for therein; (c) that the same is multifarious, and (d) for other reasons to be shown at the hearing.

The appellant contends: (a) That the services rendered the decedent were not unique and peculiar and that the rendering of the services as alleged does not take the case out of the operation of the Statute of Frauds; (b) that there was no consideration for the promise of the decedent to appellee to convey the property here involved; (c) that the wife of appellee should have been joined with plaintiff and hence there is a non-joinder; (d) that there was no privity of contract between the wife of appellee and the decedent.

Oral contracts to devise land are legal, if the services constituting the consideration for the devise are not ordinary services and are such services that are classified as unique and peculiar services. *Evans v. Buchanan,* 183 Md. 463, 38 A. 2d 81; *Mannix v. Baumgardner,* 184 Md. 600, 42 A. 2d 124; *Weaver v. King,* 184 Md. 283, 40 A. 2d 511; *Neal v. Hamilton,* 159 Md. 447, 150 A. 867.

"There is a class of cases in which although the contract is not actionable under the Statute of Frauds it has been performed by the rendition of services the value of which cannot be estimated in terms of money, and in such cases when it appears that a monetary award will not place the parties in *statu quo,* or adequately compensate the complaining party, equity may grant relief in the nature of a specific performance of the contract.

69 *A. L. R.* 21; *Neal v. Hamilton, supra; Pomeroy Spec. Perf.* 114." *Fitzpatrick v. Michael,* 177 Md. 248, at page 225, 9 A. 2d 639, at page 641.

See also cases cited above.

In *Neal v. Hamilton, supra* [159 Md. 447, 150 A. 868], appellee gave up her position in New Jersey, as a waitress, and in consideration of her promise to come to Baltimore and "serve the intestate until his death, as cook, housekeeper, nurse, and companion, the intestate promised to give the plaintiff $12 a week as spending money, provide the plaintiff and her mother with board and lodging in his home, and, at his death, give to the plaintiff all his property." That contract was enforced. The court said:

"While the performance of ordinary services will not take an oral contract out of the Statute of Frauds, if the value of such services can be ascertained with reasonable accuracy in an action at law and adequately compensated by a recovery of damages, yet, where it is impossible to restore the plaintiff to his original position by any legal remedy, the essential condition of equity jurisdiction in case of part performance is fulfilled, and the rendition of the services will take the parole contract out of the Statute of Frauds. See *Browne on Statute of Frauds,* Secs. 273-276, 438, 452, 463. The distinction is well expressed by *Pomeroy on Specific Performance,* 3d Ed., Sec. 114: 'But if the services are of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, and it is evident that the parties did not intend to measure them by any such standard, then the plaintiff, after the performance of these services, could not be restored to the situation in which he was before, or be compensated by any recovery of legal damages'."

We think the services alleged to have been performed in the amended cross-bill were of a peculiar and unique character and that "it is impossible to estimate their value by any pecuniary standard, and it is evident that

the parties did not intend to measure them by any such standard."

From the allegations of the bill, taken to be true upon demurrer, the decedent promised to will his home to appellee, if he would give up his home in Federalsburg, persuade his wife to discontinue her employment and go with him to live with the decedent and render him the services as set out in the bill. This was accomplished by Reed, and the allegations of the amended cross-bill show his contract with the decedent was fully performed. We do not agree that the contract alleged in the amended cross-bill is indefinite or vague. We deem it to be clear and definite. We think that the services rendered to the decedent relate and have reference to the contract charged in the bill. We are of opinion, if a husband agreed to leave his home and to live in the home of an old and failing man, and persuade his wife to give up a position and to render services such as are described in the amended cross-bill to the decedent, that this is a sufficient consideration to support the promise of the decedent to the appellee to devise him his home.

The contract was entered into between the decedent and Reed. The wife of Reed was not a party thereto. The fact that, at the request of her husband, she helped him to carry out his contract with the decedent, did not render her a party to the contract. Therefore she was, properly, not made a party to the amended cross-bill. Of course, if she was not a party to the contract there could be no privity of contract between her and the deceased.

Much of the brief of the appellants has to do with the kind and character of testimony necessary to support a bill of this kind. We are not dealing with testimony. We are only determining from the allegations of the bill, admitted by the demurrer, whether it states a case for equitable relief.

For the reasons given, we affirm the order of the lower court.

*Order affirmed, with costs to appellee, and case remanded.*