# BERNARD W. WHITE ET AL.

## *vs.*

# CATHERINE E. WINCHESTER ET. AL.

*Wills: contracts relating to—; specific performance.*

A valid contract, based upon sufficient consideration, that a will of one of the parties will not be changed, may be specifically enforced, as well as a contract to make a will according to agreement. p. 524

*Decided January 12th, 1915.*

Appeal from the Circuit Court of Baltimore City. (DAWKINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*John E. Semmes, Jr.,* and *Edwin H. Brown, Jr.,* (with whom was *Matthew Gault* and *Semmes, Bowen & Semmes* on the brief), for the appellants.

*Washington Bowie, Jr.,* for the appellees.

BOYD, C. J., delivered the opinion of the Court.

This is an appeal from an order sustaining a demurrer to an amended bill filed by the appellants against the appellees—a demurrer having been sustained to the original bill, with leave to file an amended one. The facts admitted by the demurrer are: that Marmaduke G. White died intestate

on August 9th, 1875, leaving a widow, Mary E. White, and the following children: Thomas W. K., Edward C., Anne Amelia, James C. and William F. White and Catherine E. Winchester. William F. White died without issue, before the will and the agreement hereinafter referred to were made. The real etate of Marmaduke G. White consisted of two farms in Queen Anne's County,—one being known as the "Home Farm" and is the one involved in this case. A bill in equity was filed to sell the real estate left by him, and on August 8th, 1880, Messrs. John B. and Edwin H. Brown, who were appointed trustees to sell the property, sold the "Home Farm" to Mary E. White, subject to her right of dower therein, for $9,030.00, and the same day the other farm was sold to Thomas W. K. White.

Mrs. Winchester, being desirous of getting her distributive share of her father's estate, including her portion of the proceeds of sale of the two farms and of an account of long standing due by her father to her mother, sold and assigned her interest to J. Hersey Hall for $1,700.00—being two dollars less than the amounts distributed to her in the audits, namely, $1,068.83 from the two farms, and $633.17 from the open account. In November, 1882, Mr. Hall sold and assigned the interest of Mrs. Winchester to John B. Brown, who was paid for the same. In order to pay that amount Mary E. White mortgaged the "Home Farm," and that and other mortgages substituted for it were released from time to time, until one was given for $1,500.00 to Charles W. Slagle, which is still outstanding.

Mrs. Winchester having received her share in the manner stated, the remaining four children entered into an agreement with Mary E. White, in order to enable her to pay for the "Home Farm," as follows:

"This Agreement, made and concluded between Mary E. White, of the one part, and Thomas W. K. White, Edmund C. White, Anne Amelia White and James C. White, of the other part; witnesseth:

"1st. That said Mary E. White agrees and obligates herself that her will as now made and in the possession of John B. Brown shall be and remain as the consideration for the following undertaking and agreement on the part of her children hereinafter named, as follows, to wit:

"2nd. The farm bought by Mary E. White shall be and remain liable and charged with its proper proportion of costs of sale and suit to the conclusion thereof, then to the payment of the mortgage and open account claim of the said Mary E. White vs. Marmaduke G. White, in order to clear the account, but the said Thomas W. K. White, Edmund C. White, Anne Amelia White and James C. White hereby assign their said respective distributive shares of said proceeds of sales of the farm bought by the said Mary E. White to her use absolutely in order to enable her to pay for the farm, she having, however, to provide for the payment of the amount due to the assignee of Mrs. Kate Winchester, as per agreement heretofore made between Mary E. White and J. B. and E. H. Brown, Trustees.

"3rd. The farm purchased by Thomas W. K. White is to be charged with its proportion of all costs and with the overpayment of the personal estate and all other debts of the said Marmaduke G. White not hereinbefore provided for, and the residue is then to be distributed by the auditor among the heirs at law of the said Marmaduke G. White and paid over to them or their assigns.

"4th. That the said James C. White being a minor, the right to take under the will is hereby made to depend on his confirmation of this agreement when he arrives at age, or the election of some authorized person or power in his behalf in case the election has to be determined before his arrival at age.

"As witness their hands and seals this 28th day of February, 1883."

The agreement was signed and sealed by the respective parties.

The open account referred to is the one above mentioned, and according to the allegations in the bill it, with interest to date of sale, amounted to $3,576.37. The bill does not make it altogether clear why Mrs. Winchester was to receive any part of that account, but Mrs. White was credited with it, or, as stated in the bill, it was to be paid out of the proceeds of the sale of the "Home Farm." James C. White executed a confirmatory deed to Mrs. White after he became of age, and all of the terms of the agreement were carried out by the four children who were parties to it.

The will of Mary E. White, which it is stated in the record was left in the custody of J. B. Brown, was dated the 14th day of June, 1882. By it, after making certain bequests to Edward C., Anne Amelia and James C. White, she left all of the rest, residue and remainder of her estate, real, personal and mixed, in equal parts to her four children who joined in the agreement. The will provided that if any of the four children died before the testatrix, leaving children, the parent's share was to go to such children or issue, and in case any died during her lifetime, leaving no child or children, such share or shares were to go to the survivor or survivors, etc. All of the four children are dead. Thomas W. K. White was the survivor and the only one who left children— he having left eight, who are the complainants.

Mary E. White died April 2nd, 1913, in the City of Baltimore, where she had made her home with Mrs. Winchester for the past ten years, more or less. Notwithstanding the agreement quoted above, there was filed in the Orphans' Court of Baltimore City a paper purporting to be the last will and testament of Mary E. White, dated October 21st, 1912, by which all of her property, real, personal and mixed, was devised and bequeathed to Mrs. Winchester and after her death to her children. The defendants named in the bill are Mrs. Winchester and her children, together with Raymond Stewart, the husband of one of them. The only property of

value of which Mrs. White died seized and possessed was the
"Home Farm," and that was the only real estate she ever
owned. She became the purchaser of that prior to the mak-
ing of her first will and prior to the signing of the agree-
ment, although it is said by the appellees that the deed to her
by the trustees was not executed until 1886. The copy of
the deed is not in the record, but its date is immaterial as
according to the allegations in the bill she purchased the
farm in 1880 and remained in possession of it continuously
until her death.

The bill prays that the agreement "be specifically en-
forced as follows"; that the "Home Farm" be impressed with
a trust in favor of the complainants; that a trustee be ap-
pointed to convey it to the complainants as tenants in com-
mon, subject to the mortgage mentioned, and that he be
decreed to so convey it; that the defendants be required to
account to complainants through said trustee for all moneys,
rents and profits from the "Home Farm" that have come into
their hands since the death of Mary E. White, or which may
so come; that the defendants and all the beneficiaries under
the will of October 21st, 1912, be enjoined from questioning
or disputing the title which complainants shall so receive,
and for general relief.

A motion was filed asking that the amended bill be stricken
and removed from the files, but that was overruled and hence
the appellants have nothing to complain of in regard to that
motion, and we will not discuss it, but will confine ourselves
to the questions raised by the demurrer.

In the article on *Specific Performance* in *Cyc.* by John
Norton Pomeroy, Jr., it is said, "An agreement to make a
certain disposition of property by a will is one which strictly
speaking is not capable of a specific execution, yet it is within
the jurisdiction of a Court of Equity to do what is equivalent
to a specific performance of such an agreement. Such a con-
tract is enforced after the death of the promisor by fastening
a trust on the property in the hands of heirs, devisees, and
personal representatives and others holding the property with

notice of the contract or as volunteers." 36 *Cyc.* 735. In 26 *Am. & Eng. Ency. of Law,* 91, the rule is thus stated: "Equity will take cognizance of and specifically enforce a valid contract for the testamentary disposition of the estate of a decedent. Thus, agreements to devise, if founded upon a sufficient consideration, are enforceable against heirs, devisees, or representatives as though the deceased obligor were a party to the suit, by treating the heirs as trustees and compelling them to convey the property in accordance with the terms of the contract." See also 9 *Cyc.* 55; 40 *Cyc.* 1063.

But it is unnecessary to rely on authorities outside of this State, as we have a number of decisions on the subject. In *Mundorff* v. *Kilbourn,* 4 Md. 459, it was said: "There are cases to show that agreements to devise real estate may be enforced by specific performance against the devisees, if the land be otherwise disposed of by the party making the agreement, but these we think are to be dealt with no less strictly in equity than other contracts within the statute of frauds." In *Wilks* v. *Burns,* 60 Md. 64, the Court said: "There can be no doubt of the legal right of one, having the exclusive ownership of property, to enter into a contract to execute a will in favor of the other contracting party; but such transaction cannot be properly termed a testamentary disposition of property; two or more contracting parties having concurred and bound themselves by reciprocal obligations, founded on good and valuable considerations. The testamentary document is nothing more than a part of the contract, which has been determined by mutual stipulations, controlling the mind of the testator."

"If a will executed under these circumstances is subsequently cancelled, the aid of a Court of Equity can be invoked. But how does equity intervene? By an inquiry into the terms of the contract, which must be established by the adduction of proper and adequate evidence. If the proof fails, there can be no application of the remedy, and the cancelled will remains without vitality. If the proof is sufficient, the Court decrees a specific performance of the contract; the

will being examined mainly to ascertain the terms of such contract, of which it has become a part. The mode of enforcing a specific performance is by the appointment of a trustee to execute a deed of conveyance of the estate." See also *Frisby* v. *Parkhurst,* 29 Md. 58; *Semmes* v. *Worthington,* 38 Md. 298; *Hamilton* v. *Thirston,* 93 Md. 213.

Inasmuch then as it is the thoroughly established law of this State that a contract to devise real estate may be enforced by specific performance, it is difficult to understand why such an agrement as the one above set out cannot be. It cannot be doubted that Mrs. White could have destroyed the will already made, and could then have entered into an agreement to make a will, containing the same terms which are in the one she executed on the 14th of June, 1882, and there can be no valid reason assigned why she could not contract as she did with reference to the one already made. The agreement of an owner of property, that his will already made in favor of the other parties to the agreement shall remain as it is, does not interfere with his right to otherwise dispose of his property by will, more than an agreement to make a will in favor of those parties would, for, as shown above, the latter can be specifically enforced, and he would not be permitted to avoid that agreement by devising his property, by a subsequent will, to others unless of course there were circumstances which would make it inequitable to enforce the agreement. In *Baltimore* v. *Williams,* 6 Md. 235, it was said by Judge Le Grand (quoting from syllabus): "Where a deed conveys land in trust for such uses and trusts as are contained in a will *already executed,* and contains no power of revocation, the property passes under the deed, and the uses and trusts take effect by virtue of the deed. Where a deed conveys land in trust for such uses as are declared or set out in a will *already made,* neither the deed nor the will is revocable if no power of revocation is reserved in the deed." As we have seen above, in the quotation from *Wilks* v. *Burns,* in speaking of the right of the owner of property to enter into a contract to execute a will in favor of the other contracting party,

"such transaction cannot be properly termed a testamentary disposition of property; two or more contracting parties having concurred and bound themselves by reciprocal obligations, founded on good and valuable considerations. The testamentary document is nothing more than a part of the contract." In *Kine v. Farrell*, 71 N. Y. App. Div. 219, s. c. 75 N. Y. Sup. 542, a contract not to change, alter or revoke a will, was enforced against the devisees under a later will.

There can be no doubt about the consideration in this agreement being sufficient to support it. The relief asked in the bill is in reference to the very property in which the four children of Mrs. White surrendered their interests in her favor, in consideration of her permitting the will to remain as it was, and in addition to that Mrs. Winchester received her share of the proceeds of the sale of the property, yet by the will of 1912, it is left to her for life, with remainder to her children. Nor can there be any question about the terms of the contract being sufficiently definite. The property referred to in the agreement as having been purchased by Mrs. White was certainly not in doubt. The will was described as "her will as now made and in the possession of John B. Brown," and the copy in the record is preceded by the words, "Copy of the Last Will and Testament of Mary E. White, left in the custody of John B. Brown." The allegations in the bill, together with the exhibits filed, are sufficiently definite and certain to comply with the requirements of Courts of Equity before granting such relief. Of course we are only speaking of what appears in the bill and exhibits, and do not mean by anything we say to preclude the defendants from denying or meeting any of the material facts alleged, if they can, by proper evidence, but the case as presented to us by the demurrer is one that in our judgment entitles the plaintiffs to have the agreement specifically enforced.

We have not thought it necessary to discuss the codicils to the will of 1882, as apparently they were not filed with the

amended bill. As they were filed with the original bill and are in the record, it will not be out of place to add that they tend to show that Mrs. White seemed to fully understand the effect of the agreement. By the last one, which is not dated but was made after March, 1886, when the first one was made, she not only confirmed and ratified the provisions of her will and codicil thereto in the custody and care of John B. Brown, but she said "whereby my son, Thomas W. K. White, becomes at my decease the owner in fee of my real estate, and in the case of his decease during my life his issue or descendants become the owners in fee thereof."

As that question was not argued and is not now before us, we cannot properly determine the rights of Edmund W. Winchester to the legacy which the testatrix says she charged upon her real estate, with the consent of Thomas W. K. White, but must leave that undetermined. That would involve not only a question of fact as to the consent of Thomas W. K. White and, if shown to have been given, its validity as to him, but a construction of the will, in so far as necessary to determine whether such consent could bind his children, and other questions.

The authorities cited and what we have said sufficiently answer other objections to the amended bill urged by the appellees, and without further prolonging this opinion we will reverse the decree and remand the cause for further proceedings. The defendants should be required to answer within such time as the lower Court may name.

> *Decree reversed, and cause remanded for further proceedings, the adult appellees to pay the costs in this Court, and the costs below to abide the final result of the case.*