LESTER SHIMP *v.* JAMES SHIMP ET. AL.

[No. 76, September Term, 1979.]

*Decided April 7, 1980.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*R. Martin Palmer, Jr.,* for appellant.

No brief filed on behalf of appellees.

SMITH, J., delivered the opinion of the Court.

We shall here hold that a man and a wife entered into a binding contract when they executed an instrument as their

joint will.[1] Accordingly, we shall modify and affirm the judgment of the Court of Special Appeals in *Shimp v. Shimp,* 43 Md. App. 67, 402 A.2d 1324 (1979).

The facts are not in dispute. Clara V. Shimp and Lester Shimp (Shimp) were married in 1941. On May 8, 1974, they executed an instrument which was headed "Last Will and Testament of Clara V. Shimp and Lester Shimp." It stated in pertinent part:

WE, CLARA V. SHIMP AND LESTER SHIMP, of Washington County, Maryland, being of sound and disposing mind, memory and understanding, and capable of making a valid deed and contract, do make, publish and declare this to be our Last Will and Testament, hereby revoking all other Wills and Codicils by each of us made.

After the payment of all just debts and funeral expenses, we dispose of our estate and property as follows:

ITEM I. A. *MUTUAL BEQUEST*— We mutually give to whichever of us shall be the survivor the entire estate of which we may respectfully [sic] own at our death.

---

1. The Maryland authority, the late Philip L. Sykes, longtime Chief Judge of the Orphans' Court of Baltimore City, comments in his 1 *Probate Law and Practice* § 12, n. 13 (1956, Supp. 1965), "Although a joint will — one instrument testamentary in character, executed by two persons to effectuate a common testamentary plan — is regarded as valid by the great weight of authority, *the complications which may arise in the administration of estates under such instruments make them undesirable."* (Emphasis added.) 1 W. Bowe and D. Parker, *Page on the Law of Wills* § 11.1 at 553 (1960), states, "The use of a joint will is not advised, for there is greater likelihood that pitfalls of execution and draftsmanship will arise." G. Thompson, *The Law of Wills* § 34 at 69 (3d ed. 1947), states, "As a general rule, joint wills are not regarded with much favor by the courts, and are more apt to invite litigation than separate independent reciprocal wills." Similar thoughts have been echoed at numerous sessions on continuing legal education in this State. Nevertheless, some attorneys persist in using them. Recent Maryland litigation is found in Moats v. Estate of Lily W. Pumphrey, 33 Md. App. 9, 363 A.2d 589, *cert. denied,* 279 Md. 684 (1976), and Moats v. Schoch & Berry, 24 Md. App. 453, 332 A.2d 43 (1975). It will be noted that four of the judges of this Court did not participate in the consideration of the petition for certiorari in the later *Moats* case. This case appears to be the first opportunity this Court has had to consider the effect of joint wills. Perhaps this case and *Moats I* and *Moats II* will discourage the use of such wills.

B. *SURVIVOR'S BEQUEST* — The survivor of us gives the entire estate of his or her property which he or she may own at death as follows:

The first two bequests under Item I B were conditioned upon the beneficiaries' being alive at the death of the survivor of the testators. These were bequests of $1,000 each to James Shimp and Emma Plotner. Mary Virginia Huff and Betty Jane Moats were bequeathed all of the household goods and machinery. The remainder was then "devised unto" four named individuals who are said to be the children of Mrs. Shimp by a previous marriage. Mrs. Huff and Mrs. Moats were two of these named persons. The last item in the will stated:

ITEM III. We, the Testators, do hereby declare that it is our purpose to dispose of our property in accordance with a common plan. The reciprocal and other gifts made herein are in fulfillment of this purpose and in consideration of each of us waiving the right, during our joint lives, to alter, amend or revoke this Will in whole or in part, by Codicil or otherwise, without notice to the other, or under any circumstances after the death of the first of us to die. Unless mutually agreed upon, this Last Will and Testament is an irrevocable act and may not be changed.

Mrs. Shimp died in 1975. Apparently, during Mrs. Shimp's lifetime the will was left for safekeeping with the Register of Wills for Washington County pursuant to Code (1974) § 4-201 (a), Estates and Trusts Article. It has not been offered for probate, however.

It is said that the parties possessed no property of consequence at the time of their marriage. They acquired a farm in 1954 with help from the Farmers Home Administration. It was sold in 1973. The parties then bought a home. Title to the farm and the home was taken as tenants by the entireties. Mrs. Shimp possessed no probate estate at the time of her death insofar as the record discloses.

Shimp is said now to be about sixty years of age. His wife was about twenty years older than he. It is claimed that he is unable to read and write.

Shimp filed a petition in the Circuit Court for Washington County seeking declaratory relief. All the beneficiaries under the joint will were named as parties defendant. The petition referred to the provision in Item III of the will to the effect that "[u]nless mutually agreed upon" the will was "an irrevocable act and m[ight] not be changed." It said that "there was thereafter no such mutual agreement to alter or nullify the Will." It recited that although the will "was left for safekeeping with the Register of Wills Office," as the will related to Mrs. Shimp it "was never probated because apparently [she] owned no property solely in her name," that Mr. and Mrs. Shimp did own real and personal property as tenants by the entireties, and that he "s[ought] an adjudication to definitively establish that he is at liberty to dispose of his estate by other testamentary disposition unaffected by the [before quoted] section of the mutual Will" which provided that it might not be changed without the mutual consent of the parties. It added a complaint that "certain relatives" of Mrs. Shimp, "among those who [were] designated ... as Defendants, [were] demanding that [Shimp] distribute to them some of the assets that were accumulated by [him] and his deceased wife during their joint lives."

Citing *Hughes v. McDaniel,* 202 Md. 626, 98 A.2d 1 (1953); *White v. Winchester,* 124 Md. 518, 92 A. 1057 (1915), and *Moats v. Schoch & Berry,* 24 Md. App. 453, 332 A.2d 43 (1975), the chancellor concluded that the will was revocable, but that the contract under which the will was executed might be specifically enforced in equity or damages recovered upon it at law. Thus, he said, "In view of the above authorities, the Court will dismiss the Bill of Complaint and leave the third party beneficiaries to the remedy above mentioned." The bill of complaint was dismissed "with costs to the Plaintiff."

In *Mauzy v. Hornbeck,* 285 Md. 84, 400 A.2d 1091 (1979), the Court had before it a declaratory judgment action in

which both sides had sought a decree as to the proper interpretation of a statute. The Court noted, "[I]nstead of declaring the parties' rights and resolving the issues, the circuit court merely dismissed the bill of complaint. This was improper." *Id.* at 90. Judge Eldridge referred for the Court to a number of our prior cases on the issue and quoted from *Hunt v. Montgomery County,* 248 Md. 403, 237 A.2d 35 (1968). In that case Chief Judge Hammond said for the Court:

> In Maryland this Court has said time and again that seldom, if ever, in a declaratory judgment proceeding should a demurrer be sustained or the bill or petition dismissed without a declaration one way or the other of the rights of the parties. [*Id.* at 410.]

The other cases cited by the Court in *Mauzy* are to the same effect. Hence, it follows that the Court of Special Appeals erred in affirming the dismissal of this action.

Shimp in his argument focuses not on the contract between him and his wife as expressed in the will, but on the will itself. He contends that the will is invalid, not because it fails in any way to comply with the requisites of Code (1974) § 4-102, Estates and Trusts Article, but because (1) "it passes no separate property, was not admitted to probate and is not to take effect until the death of the survivor"; (2) "the burden is upon the party asserting the contract to prove it and the Appellee has failed to prove the existence of separate tangible consideration to support a contractual promise not to revoke the joint will," and (3) "assuming, arguendo, that there exists proven sufficient consideration to support a promise not to revoke, there must be an election to accept benefits under the will and probate of the will."

Many commentators have lamented the fact that courts, as Shimp here attempts to do, have tended to blend the will and contract components of an instrument such as that now before us. The result has been that wills, which are by their nature ambulatory, have been held in some instances to be irrevocable, and contracts, which by their nature trigger liability upon breach, have been held rescindable in

some cases. For instance, B. Sparks, *Contracts to Make Wills* (1956), states:

> Although it is elementary contract law that one party cannot, in the absence of a breach by the other, rescind his obligation without incurring liability for his failure to perform, there is much discussion both in the cases and among the commentators of the promisor's right to rescind a contract to make a will. And although it is an elementary principle of testamentary law that a will is by its very nature freely revocable and ambulatory until the death of the testator, there is much discussion of the irrevocability of a will that has been executed in compliance with a contract. Neither of these concepts has any foundation in principle nor is either of them supported by more than very meager authority. They both result from an evident failure to distinguish the effect of a will from the rights and duties created by contract. Thus, while the overwhelming weight of authority reaches the logical, and what seems to be the inevitable, conclusion that the contract is irrevocable except by mutual consent of both parties to it and that the will is always revocable so long as the testator is alive and *sui juris,* the confusion still prevails among the commentators and in judicial dicta. [*Id.* at 110-11.]

Professor Sparks explains:

> At least part of the difficulty arises from the fact that actions to enforce contracts to devise or bequeath are often designated as actions to enforce wills made pursuant to contract. When the will has once been made there is often a tendency to treat the rights under the will and the existing contractual rights as being identical. If the contract is thought of as a contract to pass property at death, and the will thought of as a vehicle for passing the property, much of the confusion and apparent

conflicts would disappear. The contract, not the will, gives the promisee a right to the property, and, when litigation arises, it is the contract that must always be established. Once the contractual right is established the interests of the promisee are protected whether or not a will has been executed. When the will has been executed but subsequently revoked, it merely confuses the issue to talk of enforcing the will or holding that the will was irrevocable in equity. The will is not "enforced" and there is no such thing as a will that is irrevocable in equity or anywhere else. . . .

It should be clear that a joint or mutual will, like any other will, is always revocable while the testator is alive and *sui juris,* but that a valid contract is never revocable except by the consent of all the parties to it. The tendency, especially where joint or mutual wills are concerned, to speak of the will and the contract as one and the same thing has concealed, rather than provided a solution for, the problems involved. There are often discussions of the revocability of joint and mutual wills without any prior determination of whether or not there is any contract involved. Such an approach completely ignores the entire nature of the transaction. If joint and mutual wills are treated like any other wills, and contracts to make joint or mutual wills treated like any other contracts, the confusion and uncertainty in this branch of the law would tend to disappear. [*Id.* at 112-15.]

To similar effect see Eagleton, *Joint and Mutual Wills,* 15 Cornell L.Q. 358, 366-67, 385 (1930).

In Maryland a will is revocable. For instance, an agreement to make an irrevocable will was before the Court in *O'Hara v. O'Hara,* 185 Md. 321, 44 A.2d 813 (1945). Judge Delaplaine said for the Court:

And yet it is beyond question that he has the legal

right to make a different disposition of his property at any time. A will is evidence of the testator's incipient intention, authenticated in accordance with the requirements of the law, to take effect after his death, but remaining under his control during the entire period of his life. The testator can revoke his declared intention and alter his will as long as he possesses testamentary capacity. The untrammeled right to revoke a will has never been abridged by the State. [*Id.* at 325.]

To like effect see *Ottaviano v. Lorenzo,* 169 Md. 51, 63, 179 A. 530 (1935), *Wilks v. Burns,* 60 Md. 64, 69 (1883), and *Alexander v. Worthington,* 5 Md. 471, 480 (1854). In *Moats v. Schoch & Berry,* 24 Md. App. 453, 332 A.2d 43 (1975), certain parties opposed admission to probate of the will of Lillie W. Pumphrey because of a prior joint will with her husband who had predeceased her. The Court of Special Appeals said the issue before it as framed by the parties was:

"Is a Joint and Mutual Will, contractual in nature, *irrevocable* and therefore entitled to probate to the exclusion of later purported testamentary documents, where said Will was not revoked prior to the death of one of the parties thereto and the survivor caused said Will to be probated as the Will of the deceased party and accepted benefits thereunder?" [*Id.* at 458 (emphasis in original).]

Chief Judge Orth carefully reviewed for the court our prior cases and the law generally. The court said:

We think it patent that Maryland follows the great weight of modern authority that "an instrument is not to be denied probate as a will for the reasons that it was executed by two or more persons purporting to sign as testators, contains bequests which are reciprocal, and was executed pursuant to a contract, provided the instrument is not dependent upon the death of the survivor for

effectiveness as the will of the first to die, but can be admitted to probate successively upon the death of each testator as his separate will." Annot., 169 A.L.R. 14-15. Such a will, however, may be revoked in a manner provided by Estates & Trusts Art. § 4-105, and a subsequent will, validly executed, and which is the last will of the testator, shall be admitted to probate. But, the contract upon which the prior will was executed, upon proof of its validity, may be specifically enforced in equity, or damages recovered upon it at law. See P. Sykes, *Maryland Probate Law and Practice*, § 12 (1956).

We hold that the Circuit Court for Charles County was correct in ordering that the 1957 will of Lillie W. Pumphrey be admitted to probate. [*Id.* at 465.]

We agree. The fact that a will may be revoked is not determinative of the issue before us, however.

The issue with which we are faced is not the revocability of the will insofar as Shimp is concerned, but whether he entered into a binding contract with his wife to devise according to a stated plan. As noted by Professor Sparks, *op. cit.* at 115, a joint will may be but a variation of such a contract. He points out, however, "The clear weight of authority, and certainly the sounder view, is that the mere presence of either joint or mutual wills does not raise any presumption that they were executed in pursuance of a contract." *Id.* at 27. See also *Persson v. Dukes*, 280 Md. 194, 197, 198, 372 A.2d 240 (1977).

Contracts to devise have been known to this Court at least since the time of *Simmons v. Hill*, 4 H. & McH. 252 (1798), and *Browne v. Browne*, 1 H. & J. 430 (1803). In *Moats v. Estate of Lily W. Pumphrey*, 33 Md. App. 9, 18-19, 363 A.2d 589, *cert. denied*, 279 Md. 684 (1976), the Court of Special Appeals held in a sequel to *Moats* that the chancellor was not clearly in error when he found that the parties had not established a contract to convey by the prior joint will. The court quoted in *Moats II* from *Semmes v. Worthington*, 38

Md. 298 (1873). In *Semmes* this Court was faced with an alleged contract to devise. Judge Alvey said for the Court:

That a contract to devise real estate, if shown to be in all respects fair, just and reasonable, founded on sufficient consideration, and there be no doubt on the proof as to any of its terms, may be enforced by specific performance, by way of conveyance, as against the heirs or devisees of the party obligating himself to devise, is a proposition fully sustained by authority, and we do not understand that such proposition is at all controverted in this case. But in all cases for specific performance the contract must be accurately stated in the bill, and the proof must in every essential particular correspond with the terms of the contract thus set up. The proof must be clear and explicit, leaving no room for reasonable doubt. And in cases for the specific enforcement of a contract to devise, like the present, where the property has been devised to other parties, the utmost certainty is required, as, by the enforcement of the contract, the court undertakes to set aside a solemn testamentary act of the deceased party, in the absence of all possible explanation of his conduct, and when he is no longer present to vindicate himself against the imputation of bad faith. To such cases may well and most aptly be applied the rule so clearly and forcibly stated by the late Mr. Justice Grier, of the Supreme Court, in delivering the opinion of that tribunal, in a case of an application for specific performance. In speaking of the character and certainty of proof required on such applications, he said: "Such proof must be clear, definite and conclusive, and must show a contract leaving no *jus deliberandi* or *locus penitentiae.* It cannot be made out by mere hearsay, or evidence of the declarations of a party to mere strangers to the transaction, in chance conversations, which the witness had no reason to recollect from interest in the subject-matter, which

may have been imperfectly heard or inaccurately remembered, perverted or altogether fabricated; testimony, therefore, impossible to be contradicted." *Purcell v. Miner,* 4 Wall. 517. [*Id.* at 318-19.]

Professor Sparks, *op. cit.,* 24, speaks of the degree of proof required to establish a contract to devise as "clear and convincing." To like effect see 1. W. Bowe and B. Parker, *Page on the Law of Wills,* § 10.5 (1960). This rule has been recited by this Court many times in cases where the Court has found proof to be sufficient as, *e.g.,* in *Ledingham v. Bayless,* 218 Md. 108, 145 A.2d 434 (1958), and *Mannix v. Baumgardner,* 184 Md. 600, 42 A.2d 124 (1945); in instances where the proof has been found insufficient as, *e.g.,* in *Soho v. Wimbrough,* 145 Md. 498, 510, 125 A. 767 (1924), *Hamilton v. Thirston,* 93 Md. 213, 48 A. 709 (1901), and *Mundorff v. Kilbourn,* 4 Md. 459, 462 (1853); and explicitly or implicitly in cases which have reached us on demurrer such as *Nichols v. Reed,* 186 Md. 317, 46 A.2d 695 (1946), *Scott v. Marden,* 153 Md. 1, 137 A. 518 (1927), and *White v. Winchester,* 124 Md. 518, 92 A. 1057 (1915). The Maryland cases are discussed in an annotation by William H. Perkins, Jr. (1897), in his edition of *Whitridge v. Parkhurst,* 20 Md. 62 (1863). The reason for the strict rule as to evidence was set forth by Judge W. Mitchell Digges for the Court in *Soho* when he pointed out, "The law . . . does not look with favor upon agreements of this character, and the contract relied on must be set out in the bill of complaint, and must be certain and unambiguous in all its terms." *Id.* 145 Md. at 510. In this instance the terms of the contract are clearly and unambiguously set forth in the will.

Contracts to devise are subject to the same rules as to validity as are other contracts. For instance, in *Ledingham* Judge Hammond said for the Court:

Leaving aside the question of whether such a contract should be specifically enforced, there would seem to be no reason to treat a contract to make a will as governed by principles different in

any way from those applied to contracts in general, and most courts take this view. As in other contracts, the parties may agree on the surrender or acquisition of any legal rights as consideration, and the adequacy of such consideration is material only as an element of fraud or undue influence or as one of the factors which a court will take into consideration in determining whether or not to grant specific performance. An agreement to render services which the promisee is not bound to render, independent of the contract, is a sufficient consideration. Page, *Wills, Lifetime Edition,* Sec. 1712. *Hanson v. Urner,* 206 Md. 324, 335. See cases cited in annotation in 69 A.L.R. 14; Eastman v. Eastman (Me.), 104 A. 1; *Earnhardt v. Clement* (N.C.), 49 S.E. 49. [*Id.* 218 Md. at 115.]

The commentators agree. See, *e.g.,* Sparks, *op. cit.,* at 22. Vaughn, *The Joint and Mutual Will,* 16 Bay. L. Rev. 167 (1964), states:

At the present time the accepted view is that a joint and mutual will is enforceable only to the extent that the contract behind it is enforceable. A contract to devise at one's death is enforceable if it is made on valuable consideration, and no statute is contravened. The suit may be for specific performance or in Quantum Meruit. The contract may be express or implied, but if it is implied, it must be alleged and proved. Furthermore, the general rules of contract law apply to contracts to bequeath, and, since the deceased cannot speak, the contract must be fully and satisfactorily proved. [*Id.* at 174-75.]

It is said in Annot., 169 A.L.R. 9 (1947):

An agreement between husband and wife to devise their property by a will jointly executed is not enforceable unless supported by a valuable consideration or at least a consideration that is

sufficient under the rules applied to contracts generally. [*Id.* at 31.]

The appellees did not appear in this Court but in the Court of Special Appeals they urged that sufficient valuable consideration might be found in the wife's forebearance of her right to dispose of her property differently, that is that she would be bound in her own testamentary disposition in the event her husband predeceased her, and the right given both testators to make the third-party bequests contained in the will.

In Maryland *either* detriment to the promisor *or* benefit to the promisee is sufficient valuable consideration to support a contract. In *Hercules Powder Company v. Campbell,* 156 Md. 346, 144 A. 510 (1929), an original contract for the sale of dynamite was supplemented by a later agreement which spelled out exactly what the seller's duties were under the original contract. It placed the risk of damage on the buyer. The buyer contended that since he was receiving nothing under the supplementary contract to which he was not entitled under the first contract, the supplementary contract placing the risk on him was void for want of consideration. The Court pointed out that disputes existed between the parties as to their respective obligations. It said that instead of rescinding the contract the parties agreed to supplement it by a writing which made certain their obligations under those terms whose significance was doubtful and which also expressed their agreement on matters upon which their minds had not previously met. It stated that as a result of this supplementary agreement the obligation of the seller with respect to the blasting became certain for the first time and that in addition the seller promised to give to the buyer the services of its employees to assist in the blasting work, and to do so without any charge to the seller. In rejecting the contentions of the buyer relative to consideration, Judge Parke said for the Court:

Here was a new promise involving a detriment to the seller, and conferring a benefit upon the buyer to which it was not previously entitled.

A sufficient consideration, therefore, existed in this bilateral contract, for "mutual promises in each of which the promisor undertakes some act or forbearance that will be, or apparently may be detrimental to the promisor or beneficial to the promisee, and neither of which is rendered void by any rule of law other than that relating to consideration, are sufficient consideration for one another." 1 *Williston on Contracts,* sec. 103 f. The undertaking or doing of anything beyond what one is already bound to do, though of the same kind and in the same transaction, is a good consideration. *Williston's Wald's Pollock on Contracts* (3rd Ed.), 203, 204. [*Id.* at 364-65.]

To like effect see *Broaddus v. First Nat. Bank,* 161 Md. 116, 122, 155 A. 309 (1931), and *Chicora Fer. Co. v. Dunan,* 91 Md. 144, 156, 46 A. 347 (1900). To similar effect see 1 Williston on Contracts §§ 102 and 102A (3rd ed. Jaeger 1957).

Applying this principle, the commentators agree that valuable consideration is shown where each testator agrees by joint will or other contract to make a particular testamentary disposition in return for a like promise from the other testator. For instance, Professor Sparks states:

The rules governing the consideration required in contracts to devise or bequeath are no different from the rules governing consideration in other types of contracts. Mutual promises whereby each of two persons contracts with the other to make a will of a certain tenor are sufficient consideration for each other. Even though the contract is that the first to die will leave his estate to the survivor and there is no obligation placed upon the survivor not to change his will the mutual promises are nevertheless adequate consideration. Each party has assumed the possibility of being bound in his testamentary disposition, a possibility that is sure to become a reality in case of one of them. A promise

to devise all of one's interest in certain property is legal consideration even though the promisor actually has no interest and even though the unlikelihood of his having any interest is known to both parties at the time the bargain is entered into. [*Id.* at 34-35.]

To similar effect see 1. J. Alexander, *Commentaries on the Law of Wills* § 89 at 103 (1917); T. Atkinson, *Handbook of the Law of Wills* 212 (2d ed. 1953); Evans, *Concerted Wills — A Possible Device for Avoiding the Widow's Privilege of Renunciation,* 33 Ky. L.J. 79, 81 (1945); Page, *op. cit.,* § 10.6 at 457, and Young, *The Doctrinal Relationships of Concerted Wills and Contract,* 29 Tex. L. Rev. 439, 446 (1951).

Judge Moylan said for the Court of Special Appeals in the case at bar:

Our present will provides for mutual bequests and third party bequests. It states that the parties make both the reciprocal and third party bequests in consideration for the agreement to waive the right to change this will. Were the reciprocal bequests the only promise on one side, it could be said that this was a preexisting obligation and could not be consideration. However, the will expressly states that the waiver is made in exchange for the agreement to make the other bequests as well. There is no legal obligation to do this. Therefore, the exchange of the promises made by the parties was sufficient consideration for the contract.

This case presents us with a valid contract which was the basis for the making of a joint will. Although the will may be revoked at any time in a manner specified by law, the appellant may not avoid his contractual obligations by doing so. *Persson v. Dukes,* 280 Md. 194 (1977); Anno. 85 ALR3d 8; *see also,* 97 CJS, *Wills* § 1364. [*Id.* 43 Md. App. at 73.]

We agree.

The arguments of Shimp directed at the validity of the will are without merit. He argues, for instance, that his wife's will is not valid because it passes no separate property and was not admitted to probate. Those arguments have no bearing upon the validity of the underlying contract which we have found.

It may be if Shimp remarries that his then wife may be placed in a disadvantageous position by the contract with the first wife. If by reason of a prior marriage he was under a burdensome requirement to pay a substantial sum to a prior wife by way of alimony and for support of minor children, the second wife might regard herself as in a disadvantageous position. However, as Dean Evans so forcefully stated, "A woman who marries a spouse after the latter has so bound himself by contract undertakes the marriage constrained by all obligations then existing. No legislative purpose has been discovered by the courts which should avoid in this way existing rights and duties." 33 Ky. L.J. at 86.

Shimp is entitled to a declaratory decree stating that he may revoke his will but that an enforcible contract was entered into between him and his wife. At his death it may be specifically enforced in equity or damages may be recovered upon it at law.

> *Judgment of the Court of Special Appeals vacated and case remanded to that court for passage of an order remanding the case to the Circuit Court for Washington County and for the entry of a decree in accordance with this opinion; appellant to pay the costs.*