517 A.2d 1092

Steven M. **VOGELHUT**

v.

Nelson R. **KANDEL.**

No. 29, Sept. Term, 1986.

Court of Appeals of Maryland.

Dec. 1, 1986.

John H. Zink III, Towson, for appellant.

Saul E. Kerpelman, Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland (retired) Specially Assigned.

COUCH, Judge.

We shall here hold that where a discharged attorney gives the files relating to his former client to a successor attorney in exchange for a promise by the successor attorney to give the discharged attorney twenty-five percent of any fee received by the successor attorney, there is an enforceable contract between the attorneys not involving the client. We further hold that such an agreement does not violate either Disciplinary Rule 2–106 or 2–107 of the Code of Professional Responsibility.

The facts of this case are as follows. Shirley Ellis retained the services of attorney Nelson R. Kandel after she and her children sustained personal injuries in an automobile accident. Ellis, apparently dissatisfied with Kandel's representation, subsequently retained attorney Steven M. Vogelhut under a forty percent contingent fee agreement. Vogelhut wrote a letter to Kandel advising Kandel of his retention by Ellis and requesting "all the information you have concerning this matter;" at the bottom of the letter was a note, signed by Ellis, repeating both the fact of Vogelhut's retention and the request for files.

Some two months later, an associate in Kandel's practice, Robert Wolf, took the Ellis files to Vogelhut's office with instructions to negotiate a fee for services rendered prior to Kandel's discharge. Wolf surrendered the files and Vogelhut signed a written receipt for the files and for three insurance checks, payable to various members of the Ellis family, contained therein. There was conflicting testimony at trial as to the result of the negotiations. Wolf testified that Vogelhut agreed to give Kandel twenty-five percent of any fee received by Vogelhut from the Ellis case; Vogelhut denied that a binding agreement was reached. After the meeting, Wolf sent a confirmatory letter to Vogelhut reciting his version of the terms of the alleged agreement. Vogelhut admitted receiving the letter and stated that he did not respond thereto because he had never agreed to the terms set forth in the letter and because Mrs. Ellis had

indicated that she did not want Kandel to receive any remuneration.

Upon settlement of the Ellis case, Vogelhut wrote to Kandel asking for an accounting of the time Kandel claimed, the nature of the services performed, and his hourly rate, so that Vogelhut could determine if Kandel was entitled to compensation for services rendered the Ellis family on a *quantum meruit* basis. Kandel responded by demanding twenty-five percent of Vogelhut's fee pursuant to their agreement. Vogelhut refused this demand and Kandel sued Vogelhut for breach of contract.

The matter was heard in a bench trial in the Circuit Court for Baltimore City. The trial judge resolved the disputed facts in favor of Kandel and rendered judgment in his favor for $18,700.00. The Court of Special Appeals affirmed in *Vogelhut v. Kandel*, 66 Md.App. 170, 502 A.2d 1120 (1986). We granted Vogelhut's petition for certiorari, 306 Md. 71, 507 A.2d 185, and affirm the judgment of the intermediate appellate court.

Appellant Vogelhut presents three questions for our consideration which we shall address *seriatim*.

I

*Do the rules of agency attend negotiations between a discharged lawyer and his successor for settling a division of legal fees?*

■ The appellant claims that he was acting as an agent of a disclosed principal (Mrs. Ellis) in his negotiations with the discharged attorney and therefore the law of agency is apposite to a resolution of the case *sub judice*.[1] The trial judge found, however, as a matter of fact, that the fee

---

**1.** The appellant raised two arguments under the law of agency. First, that an attorney needs actual authority to enter into a contract with a discharged attorney for the settlement of legal fees. Second, that an agent who negotiates a contract on behalf of a disclosed principal is not a party to the contract. In light of our resolution of the agency issue, we need not address the merits of these contentions.

agreement was a contract between the discharged attorney and the successor attorney and not a contract between the client and the discharged attorney. The trial judge stated, in pertinent part, that "the whole dispute is not over something that Mrs. Ellis is obliged to pay, but what Vogelhut is obliged to pay." Implicit in this statement is the trial judge's conclusion that the successor attorney was not negotiating the fee arrangement as an agent for Mrs. Ellis.

Factual findings will not be disturbed on appeal unless clearly erroneous. Md.Rule 886. We have reviewed the record and find sufficient evidence to support the finding of the lower court.

## II

*Is a discharged lawyer ethically precluded from sharing the fee of his successor, either not in proportion to the value of services, or in the absence of the client's consent?*

The substance of the appellant's second contention is that the agreement between the attorneys violated DR 2–106 and DR 2–107 of the Code of Professional Responsibility and therefore, inasmuch as the Code is an expression of the public policy of this State, the contract is unenforceable as against public policy. We disagree.

DR 2–106 and DR 2–107 of the Code of Professional Responsibility have no application to an agreement between a discharged attorney and a successor attorney whereby the former gives the files of the erstwhile client to the latter in exchange for a promise to share a percentage of any fee received. DR 2–106 regulates fees for legal services.[2] The

---

2. DR 2–106 Fees for Legal Services.

   (A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

   (B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

appellant claims that the fee sought by the appellee is clearly excessive in light of the appellee's modest efforts on behalf of the Ellis family.

DR 2-106, read in *pari materia* with its respective ethical considerations, is, however, plainly limited to fee agreements between a client and his attorney. Where, as here, the agreement is between two attorneys and the agreement has no effect on the fee the client contracted to pay, DR 2-106 is inapposite.

■ DR 2-107[3] proscribes the division of fees between attorneys not properly associated unless, *inter alia*, "[t]he client consents to the employment of the other attorney

---

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

(C) A lawyer shall not enter into an arrangement for, charge, or collect a contingent fee for representing a defendant in a criminal case.

3. DR 2-107 Division of Fees Among Lawyers.

(A) A lawyer shall not divide a fee for legal services with another lawyer who is not a partner in or associate of his law firm or law office, unless:

(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.

(2) The division is made in proportion to the services performed and responsibility assumed by each.

(3) The total fee of the lawyers does not clearly exceed reasonable compensation for all legal services they rendered the client.

(B) This Disciplinary Rule does not prohibit payment to a former partner or associate pursuant to a separation or retirement agreement.

after a full disclosure that a division of fees will be made."
DR 2-107(A)(1). The appellant maintains that the agreement contravenes DR 2-107 because Mrs. Ellis never consented to the agreement.

DR 2-107, however, contemplates *concurrent* representation of a client by more than one attorney insofar as the rule requires an attorney to obtain the consent of the client upon the employment of a second attorney. Here, there was no such concurrent representation; to the contrary, Mrs. Ellis discharged her attorney and she procured the employment of the successor attorney. DR 2-107 was formulated to prohibit brokering, to protect a client from clandestine payment and employment, and to prevent aggrandizement of fees. *Krajewski v. Klawon*, 84 Mich.App. 532, 538, 270 N.W.2d 9, 11 (1978). Patently, we are not faced with such a situation in the present case.

With respect to the remainder of appellant's argument, that a contract in violation of the Code of Professional Responsibility is unenforceable as against public policy, the foregoing analysis is logically dispositive thereof.

## III

*Is the surrender of files by a discharged attorney adequate consideration to support a promise by the successor attorney to share a percentage of any fee received?*

Finally, the appellant alleges that the contract fails for lack of consideration because by the time the appellee gave the files to the appellant, some two months after the appellant requested the files, the materials contained therein had been duplicated by the appellant. We perceive no merit to this contention.

It is basic contract law that courts generally will not inquire as to the adequacy of consideration. *Blumenthal v. Heron*, 261 Md. 234, 243, 274 A.2d 636, 640 (1971). The policy behind this rule was best expressed by our predecessors in *Taylor v. Turley*, 33 Md. 500, 505 (1871):

"It is not the province of the Courts to interfere with the natural right of parties to contract, and to exercise their own will and judgment upon the subject; and they will have the power to estimate the value of the consideration and the benefits to be derived from their contracts, where there is no incompetency to contract, no fraud or surprise, and no rule of law is violated."

It follows, therefore, that anything which fulfills the requirement of consideration, that is, one recognized as legal, will support a promise, whatever may be the comparative value of the consideration and of the thing promised. *Blumenthal v. Heron, supra,* 261 Md. at 243, 274 A.2d 636 (quoting *Hercules Powder Co. v. Harry T. Campbell Sons Co.,* 156 Md. 346, 144 A. 510 (1929)). *Accord* 1 A. Corbin, *Corbin on Contracts* § 127 (1963); 1 S. Williston, W. Jaeger, *A Treatise on the Law of Contracts* § 115 (3d ed. 1957). A benefit to the promisor or a detriment to the promisee is sufficient valuable consideration to support a contract. *Shimp v. Shimp,* 287 Md. 372, 385, 412 A.2d 1228, 1234 (1980). Legal detriment means "giving up something which immediately prior thereto the promisee was privileged to retain, or doing or refraining from doing something which he was then privileged not to do, or not to refrain from doing." 1 S. Williston, *A Treatise on the Law of Contracts, supra,* § 102A at 382.

We agree with the trial court, upon reviewing the record, that there was adequate consideration to support the contract between Vogelhut and Kandel; thus, finding no error, we affirm.

JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. APPELLANT TO PAY COSTS.

RODOWSKY, Judge, concurring.

Although I agree with the result in this case, I would explain it by analyzing the special contract sued upon as having effected a novation.

The authority of an attorney to act for a client is revocable at the will of the client. *Boyd v. Johnson,* 145 Md. 385, 389, 125 A. 697, 698–99 (1924). The client's power to revoke is an implied term of the retainer contract so that, by terminating the representation, with or without cause, the client does not breach the retainer contract. *Martin v. Camp,* 219 N.Y. 170, 114 N.E. 46, *reh'g denied,* 219 N.Y. 627, 114 N.E. 1072 (1916), *modified on other grounds,* 220 N.Y. 653, 115 N.E. 1044 (1917). If the client discharges the attorney for cause, the prevailing rule is that the attorney may not recover any compensation. *See* F. MacKinnon, *Contingent Fees for Legal Services,* at 77–80 (1964); S. Speiser, *Attorneys' Fees* § 4:37, at 189–90 (1973); E. Wood, *Fee Contracts of Lawyers* Sec. 68, at 201–203 (1936). If the client terminates the representation without cause, the attorney is entitled to be compensated for the reasonable value of the legal services rendered prior to termination. *Palmer v. Brown,* 184 Md. 309, 40 A.2d 514 (1945); *Boyd v. Johnson, supra,* 145 Md. at 389–90, 125 A. at 699; *Western Union Telegraph Co. v. Semmes,* 73 Md. 9, 20 A. 127 (1890). For purposes of the instant appeal we consider Ellis to have terminated Kandel's representation without cause. By finding that Kandel's surrender of his retaining lien was the consideration for Vogelhut's promise to pay, the trial court necessarily found that Kandel had not breached the retainer contract.

Thus, as a matter of legal theory, Ellis had a present obligation as of the time of termination to pay Kandel the reasonable value of the services rendered by Kandel. On the other hand, Kandel, in accordance with legal theory, would retain the funds and papers of the client then in hand until he received that payment. *Ashman v. Shecter,* 196 Md. 168, 76 A.2d 139 (1950). The reality is that this situation can result in an impasse. Kandel and Vogelhut cut through the impasse in a practical manner by reaching their agreement.

Kandel surrendered his retaining lien on Ellis's papers and moneys as well as his claim against Ellis. It would be inconsistent for Kandel to receive, in the event of recovery, twenty-five percent of Vogelhut's fee and at the same time claim in *quantum meruit* against Ellis. This is because the former substitutes for the latter. The implicit beginning point of the negotiation between Vogelhut and Kandel's representative, Wolf, was Kandel's *quantum meruit* claim on which an unliquidated amount was then due and payable by Ellis. The contract that was made substituted Vogelhut for Ellis as obligor, substituted a percentage of Vogelhut's contingent fee for the unliquidated amount, deferred payment, and made payment contingent on Vogelhut's earning a contingent fee out of a recovery on behalf of Ellis. Against that background Vogelhut's agency, illegality, and consideration arguments may be dispatched quickly.

Vogelhut was not contracting as agent for a fully disclosed principal inasmuch as he was the promisor. Concededly, Ellis benefited from the novation because her liability was discharged. She was no longer an obligor; however, she is not a promisor.

Vogelhut's primary illegality argument assumes that DR 2–106 governs and that it renders the contract unenforceable. This argument confuses the two obligations involved here. Kandel was governed by DR 2–106 in valuing his services and could not ethically claim an excessive fee for release of his retaining lien. Ellis's obligation to pay Kandel, however, was discharged by novation. The special contract that was substituted for the quasi-contract fee agreement, and on which this suit was brought, is not subject to DR 2–106.

Finally, as consideration for Vogelhut's promise there is the detriment to Kandel in surrendering the lien, the benefit to Vogelhut in obtaining the files, and the benefit to Ellis in obtaining a discharge on the *quantum meruit* obligation.